Dodds *v.* P., M. & B. Railways Co.

Argued April 21, 1932.

Before Trexler, P. J., Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Edward O. Tabor,* and with him *S. Leo Ruslander,* for appellant. Since the marriage took place in Mexico, in full compliance with Mexican law, it can only be annulled in accordance with Mexican law. Stull's Estate, 183 Pa. 623; Schofield v. Schofield, 51 Pa. Superior Ct. 564; Com. v. Lane, 113 Mass. 458; State v. Hand, 87 Nebr. 189.

The California decree was not entitled to full faith and credit. Supreme Council R. A. v. Green, 237 U. S. 531; Cunningham v. Belchertown, 149 Mass. 223; Garcia v. Garcia, 25 So. Dak. 645.

*Harry J. Nesbit,* for appellee, cited: Commonwealth ex rel. v. Parker 59 Pa. Superior Ct. 74; Coates v. Coates, 160 California Reports, 671; Klaas v. Klaas, 14 Pa. Superior Ct. 550, 553.

OPINION, BY STADTFELD, J., October 10, 1932:

This is a workmen's compensation case. From the agreed statement of facts the following, inter alia, appears: Claimant's husband was killed September 5, 1926 by accident in the course of his employment with defendant company, and, by agreement, compensation was paid to his widow, Dillie Dodds, claimant and appellee, for herself and the minor daughter who had been adopted by claimant and her late husband, regularly until August 2, 1928. Dillie Dodds, the widow, went to California, and, on June 14, 1928, was married to Benjamin Oldmixon at Tijuana, Mexico, the marriage ceremony being performed in all respects in full compliance with the Mexican law. Shortly after the marriage ceremony, Dillie Dodds and her husband returned to Los Angeles where they lived as husband and wife until October 1, 1928. Dillie Dodds then brought suit, under a California statute, in a proper California court, against her husband, Oldmixon, alleging that the Mexican marriage had been procured by fraud, and asked that the Mexican marriage be annulled on the ground of fraud. Both parties were properly before the court, and after a hearing, the court on March 29, 1929, decreed that the marriage be annulled and set aside. Before the death of her husband, the claimant's family lived in Butler County, Pennsylvania; after his death, and sometime prior to August 2, 1928, the claimant, with her adopted daughter, went to Long Beach, California, and took up their residence at that place.

July 2, 1929, the appellant company filed its petition with the Workmen's Compensation Board of Pennsylvania, asking the termination of the compensation agreement hereinabove recited because of the mar-

riage of Dillie M. Dodds to Benjamin Franklin Old-mixon in Mexico. At the hearing before the referee, both sides being represented by counsel, it was agreed that this petition be amended and treated not only as a petition to terminate, but also as a petition to review and modify so that the case might be disposed of on its merits without the filing of other pleadings.

At the hearing before the referee the defendant offered in evidence the relevant portions of the "Acts amendatory of the codes passed at the 20th session of legislature, 1873-74," and particularly the amendment to section 82 of the civil code which section as amended (p. 187, section 20) reads as follows: "Section 82. A marriage may be annulled for any of the following causes, existing at the time of the marriage: ....... Four. That the consent of either party was obtained by fraud, unless such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband and wife." (California Code.)

The referee dismissed the petition and was sustained by the Workmen's Compensation Board. The court of common pleas of Allegheny County in an opinion by EGAN, J., affirmed the board and from the judgment so entered, this appeal is taken.

Fraud is not a ground for annulment of marriage in Mexico.

An exemplification of the record of the Superior Court of the state of California in and for the County of Los Angeles in the case of Dillie Mae Oldmixon, plaintiff, v. Benjamin Franklin Oldmixon, defendant, for annulment of marriage, duly certified under the act of Congress, was regularly offered in evidence, including the decree of court, which reads as follows: "Wherefore it is hereby ordered, adjudged and decreed that the marriage of the plaintiff and defendant be and the same is hereby annuled and set aside.

Done in open court this 29th day of March, 1929. PERCY HIGHT, Judge.''

The decree of annulment entered March 29, 1929, herein recited, was not appealed from within the time of limitation, namely one year, allowed under the California statute for the taking of an appeal in proceedings for annulment.

The questions involved, as stated by appellant are, (a) Was the widow's Mexican marriage a ''remarriage'' under the Pennsylvania Workmen's Compensation Act? and (b) Under the federal constitution, is the California decree binding on Pennsylvania as of its date, March 29, 1929, or as of the 1928 date of the marriage in Mexico?

The questions raised by this appeal have never been decided in this state. Their solution depends on the application of certain well recognized principles to the facts set forth.

The Mexican marriage, being in full compliance with the Mexican law, was valid there and everywhere. This is the recognized law in all jurisdictions.

In Stull's Estate, 183 Pa. 625, 630, our Supreme Court, discussing foreign marriages, speaks as follows: ''There is no question as to the general rule that a marriage which is valid by the law of the place where it is solemnized, is valid everywhere.''

In Schofield v. Schofield, 51 Pa. Superior Ct. 564 (1912), our own court said at p. 568: ''The general principle certainly is that between persons sui juris, marriage is to be decided by the law of the place where it is celebrated. If valid there, it is valid everywhere

. . . . . .

'' 'This rule was shown by the foreign authorities referred to by Sir Edward Simpson in 1752 in the case of Schrimshire v. Schrimshire, to be the law and practice in all civilized countries by common consent and general adoption. It is a part of the jus gentium of Christian Europe, and infinite mischief and confusion

would ensue with respect to legitimacy, succession, and other rights, if the validity of the marriage contract was not to be tested by the laws of the country where it was made.' 2 Kent's Commentaries, 92.''

Appellant's counsel have entered into a very learned discussion as to where an annulment proceeding relating back to the inception of the marriage should be sought, and as to what law should govern in other jurisdictions where an annulment may be sought, and as to the limitations on other jurisdictions in the annulment of a marriage admittedly valid where contracted, and where the cause for which sought is not a valid cause in the state where the marriage was contracted. We do not think, however, that it is necessary to pass upon all of these matters for the purpose of deciding the instant case.

The sole question in this case is the application of the full faith and credit clause of the federal constitution to the decree of the California court. As between the parties to that proceeding, there can be no question as to their personal status in relation to each other. But so far as the defendant company is concerned a different principle must be applied.

The compensation awarded in the case was under the Workmen's Compensation Law of Pennsylvania. Under its provision, a ''remarriage'' changed the rights of the widow in regard to the amount to which she is thereafter entitled to receive.

Claimant knew when she entered into the compensation agreement that it was subject to Pennsylvania laws. She knew the effect of a remarriage upon her rights. She was also visited, at the time of her contracting a re-marriage in Mexico, with the knowledge that it could not be dissolved under the law of Mexico, on the ground of fraud. Eo instanti she entered into a remarriage in Mexico, she lost certain rights under the Pennsylvania law. She cannot use a California

statute to overcome the effect of the Pennsylvania statute under which she receives her compensation.

Without questioning the validity of the California decree in its application to the parties involved in that case, we are satisfied it did not have the effect to restore to her the rights under the compensation agreement which she had lost by her remarriage.

The remarriage being valid in Mexico, where contracted, and its validity recognized everywhere, it seems to us the attempt to annul for any cause alleged to have existed at the time should be governed by the law of Mexico. If the cause alleged is not a sufficient cause under the law of Mexico, then other courts cannot assume jurisdiction to declare invalid ab initio a contract whose validity at the time is recognized when and where created, and everywhere. That marriage was a valid Mexican marriage, and is valid until annulled in accordance with Mexican law as to any matter existing at the time the marriage was contracted.

According to the agreed statement of facts, only the California statute was invoked and applied by the California court to annul the Mexican marriage. Fraud was the only ground under which the California decree of annulment was based. Fraud is not a ground for annulment under Mexican laws.

Since the marriage of Dillie Dodds was valid according to Mexican law, and since that marriage was not annulled in accordance with Mexican law, that marriage is still an existing fact for all international purposes, and hence is a fact in Pennsylvania. Therefore, Dillie Dodds *did remarry,* and therefore her right to weekly compensation from appellant ended on June 14, 1928 under section 307, clause 7 of the Workmen's Compensation Act of Pennsylvania, and thereafter she became entitled only to such payment as the Workmen's Compensation Law of Pennsylvania provides for.

The California court had no jurisdiction, power or

capacity to annul the Mexican marriage ab initio by virtue of the California statute.

12 C. J. 436, section 6: "Full faith and credit. The erroneous application by a court of the law of the forum instead of the law of the foreign jurisdiction which properly governs the transaction may, as between states, result in a denial of the 'full faith and credit' required by the federal constitution." (Citing Supreme Council R. A. v. Green, 237 U. S. 531.)

The principle applicable to the instant case is discussed in the Massachusetts case of Cummington v. Belchertown, 149 Mass. 223, 4 L. R. A. 131. The first paragraph of the syllabus reads as follows: "No ground of comity requires Massachusetts courts to recognize the decree of a New York court annulling a Massachusetts marriage between Massachusetts citizens unless it had jurisdiction of both parties. *Even if the court had jurisdiction, the decree will not be recognized unless based on grounds which would be held sufficient in Massachusetts.*" (Italics ours.)

On page 227, the court points out: "The right of a state to declare the present or future status, so far as its own limits are concerned, of persons there lawfully domiciled, cannot be extended so as to enable it to determine absolutely what such status was at a previous time, and while they were subject to the laws of another state. The decrees of its courts in the latter respect must be subject to revision in the state where rights were then existing, or had been acquired."

In the case of Garcia v. Garcia, 25 So. Dak. 645, the facts were these: First cousins had married in California where the marriage was valid, and moved to South Dakota where the statutes said that such a marriage was incestuous and void. It was held that the South Dakota courts cannot annul the California marriage of the parties, although it had jurisdiction over both of them, notwithstanding that the marriage would have been void if it had been contracted in South

Dakota. At page 653, the court says: ......"the consequences of declaring a marriage void ab initio, and annulling the same are very serious. Its effect is to bastardize innocent children; deprive them of their inheritance and to make parties whose marriage was legal and valid in the state where contracted, criminally liable in this state and subject to severe penalties."

The case of Haddock v. Haddock, 201 U. S. 562, as also that of Atherton v. Atherton, 181 U. S. 155, leading cases on the question of divorce, are not controlling of the question in the instant case, which involves an annulment of a marriage contract and not a divorce.

The distinction referred to is recognized in Millar v. Millar, 175 Calif. Reports 797. Mr. Chief Justice ANGELLOTTI, in delivering the opinion of the Supreme Court, says (806-807): "Strictly speaking, the word 'divorce' means a dissolution of the bonds of matrimony, based upon the theory of a valid marriage, for some cause arising after the marriage, while an annulment proceeding is maintained upon the theory that, for some cause existing at the time of marriage, no valid marriage ever existed." And again the chief justice says in his opinion (804-805): "That the law provides for the dissolution of the relation of marriage by divorce for specific violations after marriage by one party of duties appertaining to the relation, including the particular obligation here involved, is altogether immaterial. Such subsequent violations in no way go to the original validity of the marriage. The alleged fraud in this case is not based upon any mere violation of any duty of the marriage relation, but upon a fraudulent misrepresentation made by plaintiff at the time of the marriage, by which the consent of Millar to enter into the marriage was obtained, a matter, as we have seen, which goes to the original validity of the marriage, and renders it, at the suit of the injured party, void ab initio." To the same effect, Coates v. Coates, 160 Calif. Rep. 671.

A divorce looks to the future; an annulment ab initio goes back to the time of contracting the marriage.

An interesting and learned article on this subject is found in 22 Mich. Law Rev. 358, 360, from which we quote as follows: "The logical difficulty of giving domicile jurisdiction, is to see how a state where parties are now domiciled can declare null from the beginning a marriage that may have been entirely legal under the law governing at the time the parties contracted it: Garcia v. Garcia, 25 S. D. 645. It would seem that only the state whose laws determine the original validity of a marriage could declare it a nullity."

The views expressed above, which we believe are decisive of the controversy in the instant case, render it unnecessary to pass upon the question of whether the decree of the California court is effective as of the date of the decree, or should relate back to the date of the marriage, insofar as the attempted nullification is concerned.

We may state, however, that our views seem to be in accord with those expressed by the American Law Institute, Re-Statement of the Law of Conflict of Laws, 1930, page 162: "Section 122. Nullity from the Beginning. A state can exercise through its courts jurisdiction to nullify a marriage from its beginning only insofar as the marriage, in respect to the requirement for its validity which it is claimed was not satisfied, was governed by its law. Comment: a. As is stated (section 129), a marriage is in most particulars governed by the law of the place of marriage; and if invalidity is claimed in one of these particulars, and the decree of nullity will operate to make the marriage invalid from its inception, a decree of nullity can be granted only by a court of the state where the marriage took place." Page 182. "Section 144. Law governing nullity. The law governing the right to a decree of nullity is the law which determined the valid-

ity of the marriage with respect to the matter on account of which the marriage is alleged to be null.''

Without going into an extended discussion of the numerous questions treated in appellant's brief, we are satisfied that the decree in California did not restore the rights which claimant lost upon her remarriage in Mexico.

The assignment of error is sustained, and it is ordered that the record be remitted to the referee and the board for the purpose of making an award in accordance with the provisions of the Workmen's Compensation Law as to the unpaid compensation at the date of the remarriage.