WALTER K. MARTIN, administrator, *vs.* ALEXANDER OTIS & others.

Suffolk.   May 19, 1919. — September 11, 1919.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Evidence,* Foreign law, Opinion: experts.   *Marriage and Divorce.*

At a hearing before a master, in a probate appeal where the validity of a marriage in the State of Rhode Island was in issue, certain sections of a statute of Rhode Island were put in evidence which never had been construed by the courts of that State. A member of the bar of Rhode Island testified to his opinion as to the correct construction of the statute. This was the only evidence on the subject except the statute itself. The master stated in his report that, if he was not bound by the testimony of the expert, he should make certain findings as to the validity of the marriage under the statute. *Held,* that the master had the right to disregard the testimony of the expert and to form his own opinion as to the legal effect of the statute.

In the case above referred to the conclusion of the master, disregarding the opinion of the expert, was that the marriage in question was irregular because the ceremony was not performed in the city in which the license was granted as required by a section of the statute of Rhode Island, but that under another section of that statute the marriage, if otherwise valid, was valid in spite of such irregularity, and it was *held* that the master's construction of the statute was correct.

The consummation of a marriage by coition is not necessary to its validity.

In the case above referred to, it also was *held* upon certain findings of the master that the surviving husband, although his marriage to the intestate was lawful, was not a suitable person to administer the estate of his wife and that on this ground a decree of the Probate Court appointing him administrator of her estate should be reversed.

APPEAL from a decree of the Probate Court for the county of Suffolk appointing Walter K. Martin the administrator of the estate of his late alleged wife Emma Angeanette Martin.

The case was referred to a master, who filed a report containing the findings that are described in the opinion. Later the case came on to be heard before *Braley*, J., who, at the request of the parties, reserved it upon the pleadings, the master's report and the exceptions thereto for determination by the full court.

The case was submitted on briefs.

*H. E. Warner, P. L. Stackpole & E. C. Bradlee,* for the appellee.

*W. H. Dunbar, G. R. Nutter & E. F. McClennen,* for the appellants.

DE COURCY, J. This is an appeal from a decree of the Probate Court for the county of Suffolk appointing Walter K. Martin administrator of the estate of Emma Angeanette Martin. The decree was made without notice to the next of kin, on the allegation that the petitioner was the husband of the deceased. In this court the case was referred to a master, to hear the parties and their evidence, and to find the facts. On the coming in of his report the case was reserved for our determination.

The exceptions filed by both parties deal with the question whether Martin was the husband of the intestate. The master's report states: "That depends on:

"(a) Whether he already had a wife at the time he went through the ceremony of marriage with the deceased at Middletown, Rhode Island, on September 7, 1915; or

"(b) Whether, even if he were then unmarried, the intended marriage at Middletown was void by reason of irregularities connected with the ceremony, taken in connection with the possible non-consummation of the marriage."

The findings of the master answer the first question in the negative. Martin, under the name of Walter Winston Kenilworth, was a fortune teller; and in 1901, at Atlantic City he entered into illicit relations with a married woman named Sophia Boehm. For some years they lived together ostensibly as husband and wife, both before and after she had secured a divorce from her husband. But the master finds that, "contrary to the testimony of the Boehm woman, no ceremony of marriage ever took place between her and the appellee;" that, although they "were regarded and treated by their friends and relatives as man and wife," there was

no intent on the part of Martin to create the marriage relation between himself and her; and that "the appellee was never the husband of the Boehm woman." In the absence of the evidence we must accept these findings, and the parties do not argue to the contrary.

The main controversy arises as to the alleged marriage of Martin and Emma Angeanette Clark. In 1912 Mrs. Clark, who was a widow, sixty-three years old and possessed of a considerable fortune, went to the office of Martin (or Kenilworth) in Paris, to have her fortune told. He was thirty-seven years old. He paid her marked attentions, and she became infatuated with him. Before she sailed for the United States on July 1, 1913, an engagement of marriage had been made and broken more than once. In May, 1914, Mrs. Clark returned to Paris; but after the war broke out both decided to come to America until the end of the war, and they sailed for New York on the same boat in January, 1915. He resumed his occupation of fortune-telling at Atlantic City and later at Newport, Rhode Island. Mrs. Clark was often in his company and was importuned by Martin to marry him. On August 31, 1915, they went before the city clerk of Newport and applied for a marriage license. Across the end of the paper when issued was printed "This license may be used only in Newport, Rhode Island. F. N. Fullerton, City Clerk." Under this license a marriage ceremony took place on September 7, 1915, in Middletown, a town adjoining Newport; and it was performed by an Episcopal minister, who later filed the license with his return thereon at the office of the town clerk of Middletown. The bridal couple left Newport for New York on the evening boat, both occupying the same stateroom. After short stays at hotels in Atlantic City and New York as "Mr. and Mrs. W. W. Kenilworth, Paris and Newport," they rented a small apartment in New York and lived together (occupying always separate though connecting rooms) until January, 1916. From that time matters went ill with them, by reason of his irregular habits and vices; Martin resumed his life in Atlantic City, and Mrs. Martin remained in New York, except for about one month, until her death on June 12, 1917.

According to the master's report the statutory law of Rhode Island, in effect in 1915, relating to marriage of non-residents

(Pub. Laws, 1909, c. 430, § 10) is as follows: "Persons intending to be joined together in marriage in this State must first obtain a license from the clerk of the town or city in which they reside, . . . . or, if not residents of this State, from the clerk of the town or city in which the marriage is to be solemnized. . . ." The license must bear upon it the words "This license may be used only in . . .;" and the town or city clerk is to insert the name of the town or city if the license is issued to persons non-resident in that State. The Gen. Laws of Rhode Island, 1909, c. 243, provide in § 22 (so far as here applicable) "No marriage solemnized before a person professing to have a license to join persons in marriage as required by this chapter, . . . shall be deemed or adjudged to be void, nor shall the validity thereof be in any way affected by want of jurisdiction or authority in such person or society nor by reason of non-compliance with any of the requirements of this chapter, if the marriage is in other respects lawful and has been performed with a full belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage."

This § 22 has never been construed by the courts of Rhode Island. At the trial there was presented in addition to the statute itself the testimony of a member of the Rhode Island bar, who gave his opinion as to the correct construction of the statute. The master made certain findings on the assumption that he was bound by the testimony of this witness, because it was the only testimony submitted on the subject. Plainly that is not so. The evidence as to the law of Rhode Island consisted both of the statute and of the oral testimony of an expert. It was for the tribunal determining the facts to decide what the foreign law was, as in the case of any controverted fact depending upon like evidence. *Kline* v. *Baker*, 99 Mass. 253. The master had the right to disregard the testimony of the expert if that testimony did not commend itself to his judgment. *Lindenbaum* v. *New York, New Haven & Hartford Railroad*, 197 Mass. 314, 323. *C. W. Hunt Co.* v. *Boston Elevated Railway*, 199 Mass. 220, 235. He further reports: "If I am not bound by such evidence, and if it is within my province to weigh my own construction of the statute against the construction given it by the Rhode Island attorney, then I should make, instead of findings 43 and 44, the following findings:

"43 a. The marriage between the appellee and Mrs. Clark was irregular as a ceremonial marriage because the ceremony was not performed in the city in which the license was issued.

"44 a. Said irregular marriage, however, was saved as a valid marriage by the saving clause contained in section 22 of the Rhode Island statute set forth in finding 40."

In making these latter findings, as we construe the report, the master duly considered the expert's testimony but was not convinced by it, and formed his own opinion as to the legal effect of the statute. We think the master's construction of the statute was correct. See *Parton* v. *Hervey,* 1 Gray, 119; *Commonwealth* v. *Munson,* 127 Mass. 459; *Bradley* v. *Borden,* 223 Mass. 575, 586.

The master adds: "By finding 44 a I intend to decide only that, by the saving clause referred to, the ceremony had such effect as if solemnized in due form under a proper license, and I do not intend to decide whether, in view of the other facts found in this report, the parties were validly married." Apparently by "the other facts" he refers to finding 36: "The marriage between Mr. and Mrs. Martin, if there was a valid ceremonial marriage, was never consummated by coition;" and the further finding, that as a result of a fibroid tumor with which she was afflicted, it is doubtful whether coition was probable or physically possible. As to this it suffices to say that the consummation of a marriage by coition is not necessary to its validity. *Franklin* v. *Franklin,* 154 Mass. 515. See L. R. A. 1916 E 1274, note. And impotency does not render a marriage void, but only voidable at the suit of the party conceiving himself or herself to be wronged. See R. L. c. 152, § 1; L. R. A. 1916 C 694, note. It is not contended that the marriage in question was induced by fraud on the part of Mrs. Martin. She "had explained to the appellee on more than one occasion that by reason of her condition it would be impossible for her to fulfil the part of a wife so far as the physical aspect of marriage was concerned;" and "the appellee had accepted her explanation, assigned it as an additional reason why she needed someone to care for her, and renewed his proposal of marriage." See *Millar* v. *Millar,* 175 Cal. 797; *S. C.* Ann. Cas. 1918 E 184 and note. It may be added that the present contention of the appellants, that the clergyman who performed the ceremony was not "a person professing to have a license to join persons in marriage"

manifestly was not advanced at the hearing before the master; and it is disposed of by the terms of the statute itself. The first exception of the appellants must be overruled. All other exceptions to the report are rendered immaterial or disposed of by what has been said above.

One of the objections of the appellants to the decree of the Probate Court is, that even if Martin was the lawful husband of the deceased, he "was an unfit and improper person to be appointed administrator of the estate." In addition to his general findings, the master has found specifically that Martin uses liquor to excess; that he has been convicted in New Jersey from time to time of the misdemeanor of fortune telling; that he knowingly gave false testimony at the hearings; that it would not be wise to give him possession of money and securities in which other persons have an interest; and that his feelings toward the appellants are hostile. Martin's place of residence at the time of the death of his wife has been found to be Paris, France; and apparently Paris was the domicil of Mrs. Martin, even before her marriage. The law of France as to who are entitled to share in the intestate's estate was not reported by the master. In addition to the possible interests of the next of kin, the claims of her creditors and of the State and federal governments for inheritance taxes must be considered in determining the suitability of Martin to administer the estate. On the peculiar and abnormal facts disclosed by this record it seems to us manifest that he is not a suitable person, and that the decree of the Probate Court appointing him administrator of the estate of his wife should be reversed. *Stearns* v. *Fiske,* 18 Pick. 24. *Thayer* v. *Homer,* 11 Met. 104, 110. See *Riddell* v. *Fuhrman, ante,* 69.

*So ordered.*