[Civil No. 4087. Filed June 19, 1939.]

[91 Pac. (2d) 700.]

SOUTHERN PACIFIC COMPANY, a Corporation, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA; L. C. HOLMES, SAM PROCTOR and MORTIE GRAHAM, as Members of Said The Industrial Commission of Arizona; and LORENA O. DAVIS, Applicant, Respondents.

(1)

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Petitioner.

Mr. Riney B. Salmon and Mr. J. A. Riggins, Jr., for Respondent Lorena O. Davis.

LOCKWOOD, J.—Southern Pacific Company, a corporation, the petitioner, has brought before us for review an award of the Industrial Commission of Arizona, the respondent, reinstating a certain award previously made by respondent in favor of Lorena O. Davis, the beneficiary.

The questions for our determination are of law only, and the facts necessary for their determination are not in dispute. We state them as follows: On April 14, 1926, William A. Davis, the husband of Lorena O. Davis, was in the employ of petitioner. On that date, and in the course of his employment, he received injuries resulting in his death. His widow made application to respondent for an award for the support of herself and children, and on July 8, 1926, respondent awarded her the sum of $61.42 monthly for her support, which payments were to continue until her death or remarriage. In the latter event she was to be paid a lump sum of $1,474.08, in final settlement of the award. There were several minor children of the deceased, and an award was made in their favor also, but as they are now of age and their rights are not involved in the present case, we need not refer further to them.

On January 20, 1938, the beneficiary intermarried with one Ray Earl Menefee, at Florence, Arizona. A few days after that date she advised petitioner and respondent of the fact and in evidence thereof delivered the latter certified copies of the marriage certificate, including the return of the person solemnizing the rites, and demanded of petitioner that it pay her the lump sum above set forth, in final settlement of the award. The matter was presented to respondent, which approved such settlement, and acting under this

advice and the request of the beneficiary, the petitioner delivered to her a negotiable voucher, for a small balance then due her under the original award before her remarriage, and for the amount due as a lump sum after remarriage. This voucher showed on its face that it was made in full settlement of the award. On February 10, 1938, the voucher was endorsed by her, presented at the proper bank, and she received its full face amount.

Some five months later the beneficiary filed a complaint in the superior court of Maricopa county, praying for a divorce from Ray Earl Menefee on the ground of cruelty. About a month and a half later an amended complaint was filed in the same court and cause, seeking a decree of annulment instead of a decree of divorce. As grounds for her suit for annulment, she charged that Menefee was physically incompetent at the time of the marriage, and that such incompetence had continued up to the time of the commencement of her action; that before marriage he had assured her he was competent; and that she would not have entered into said marriage contract except for his fraudulent statements and assurances. On the 8th of August, 1938, the trial court granted to her a decree of annulment of the marriage, which reads, so far as material, as follows:

"The Court, being duly advised in the premises, finds:

"That the allegations of the plaintiff's complaint, all and singular, are true; that the plaintiff is now and for more than one year last past has been an actual and *bona fide* resident of Maricopa County, State of Arizona; that the plaintiff and defendant entered into the contract of marriage and the marriage ceremony at Florence, Arizona, on the 20th day of January, 1938; that there is no issue of said marriage; that there is no community property of the parties hereto; that at the time of said marriage of plaintiff and defendant

herein *plaintiff* was physically incompetent, and that said incompetency has continued to the time of the commencement of this action; that defendant induced said plaintiff to enter into said marriage contract by fraudulent statements and assurances regarding his physical competency; and that said marriage was fraudulent in its inception, and therefore null and void.

"Wherefore, it is ordered, adjudged and decreed: That the bonds of matrimony heretofore existing between plaintiff and defendant are hereby annulled, cancelled, set aside and held to have been null and void; and that said plaintiff be, and she is hereby granted a decree annulling said marriage."

This decree was never appealed from, nor brought before this court for review, nor was there any attempt made to set it aside in any court of competent jurisdiction. Thereafter, and on September 8, 1938, the beneficiary applied to the respondent, tendering back to the petitioner herein the amount which she had received as lump settlement, as aforesaid, and asking that the settlement be set aside and that she be restored to her position under the original findings and award as it existed before her marriage to Menefee.

Petitioner protested most strenuously against the setting aside of the settlement and the reinstatement of the award, and the matter was heard before respondent. At the hearing an award was made reinstating the original award which required the monthly payments, as aforesaid, whereupon the matter was brought before us for review.

Petitioner raises several interesting and novel questions of law for our consideration, and we deal with them in what we consider their logical order. The first is whether a widow to whom an award of monthly compensation is made, and who has received under our law a lump sum in settlement of the original award upon a remarriage, may have such original award reinstated upon tendering back the amount of the lump

settlement, if the marriage has been annulled by a court of competent jurisdiction.

The question is a new one in this state. Nor have we been cited to many cases bearing thereon. The one nearest thereto in the factual situation is *Eureka Block Coal Co.* v. *Wells,* 83 Ind. App. 181, 147 N. E. 811, 812. Therein an award had been made, as in the present case, of monthly compensation, and the widow remarried. The marriage was afterwards annulled, and she claimed she was entitled to continued compensation as the widow of the original claimant. The court said:

"Appellant points out that clause (e) of section 38 of the Workmen's Compensation Act (Acts 1919, p. 165), among other things, provides that 'the dependency of a widow . . . shall terminate with . . . her marriage subsequent to the death of the employé,' and with much earnestness contends that by reason of this provision of the act the marriage of appellee to McCormick, though voidable, nevertheless was a marriage which terminated absolutely and permanently the dependency of appellee as widow of James E. Wells. We do not concur in this view. Giving the provision referred to a broad and liberal construction, as we must, a marriage, within the meaning of the statute, is not a void or voidable marriage which may at once be annulled, but a valid and subsisting marriage."

The cases of *Crummies Creek Coal Co.* v. *Napier,* 246 Ky. 569, 55 S. W. (2d) 339, and *Dodds* v. *Pittsburgh, M. & B. Rys. Co.,* 107 Pa. Super. 20, 162 Atl. 486, by inference adopt the same rule. While in both cases last cited, the court refused to restore the original award of compensation, the opinions show clearly that it was because the marriages in both cases had not been legally annulled, and the implication is that had they been, compensation would have been restored. We hold, therefore, that when a widow who is entitled to compensation under the Arizona law has remarried and received a lump settlement of the award, a legal annulment of the marriage will entitle her to have the

original award reinstated upon tendering back the amount she has received as lump settlement.

■■ The next question is whether the receipt of a lump settlement under the directions of the respondent, with the understanding on the part of all parties that such settlement was in full release and satisfaction of all claims, estops the widow from asking that the award be reinstated after an annulment of her marriage.

In the case of *Eureka Block Coal Co.* v. *Wells, supra,* which is the only one cited to us where the original award was reinstated after the annulment of the marriage, petitioner points out that the settlement therein was a transaction between the parties, not made pursuant to an order of the Industrial Board of Indiana, and urges that had it been made pursuant to the order of the board, the original award would not have been reinstated. We find nothing in the opinion which sustains this conclusion. Estoppel only exists when the party sought to be estopped, with full knowledge of all the facts bearing on the situation, takes a position which is inconsistent with one assumed later. In the present case, there was nothing except surmise to show that the beneficiary had any knowledge at the time she made her settlement of the facts upon which she later based her suit for annulment. Under such circumstances, we think the acceptance of the lump settlement did not estop her from asking for a reinstatement of the original award.

This brings us to the question which was most strenuously urged by petitioner at the hearing. It contended, and still contends, that the marriage was not, under our law, subject to annulment for the cause set forth in the complaint, and that the trial court, therefore, had no jurisdiction of the matter. If this be true, then the judgment is void on its face and subject to collateral attack, and if there be no legal annulment nor

a possibility thereof, the marriage is still subsisting and the lump settlement must necessarily stand.

 Marriage is almost universally said by the authorities to be a "civil contract," but this language is perhaps, strictly speaking, inaccurate. It may more properly be defined as a status created by and based upon a civil contract. *Hilton* v. *Roylance,* 25 Utah 129, 69 Pac. 660, 95 Am. St. Rep. 821, 58 L. R. A. 723; 38 C. J. 1273, and cases cited. Since it is founded upon contract, the question of whether the status actually exists depends upon the rules governing the making of the contract. Two of the essentials of a valid contract are that the parties have capacity to enter into it, and that they actually consent thereto, and these principles apply to the contract upon which marriage is based. It, therefore, follows logically that if a marriage contract, though proper in form, is entered into by parties who have not the capacity to consent thereto, or who, for some reason or another, have consented in form but not in fact, the marriage contract may be set aside like any other one, on the ground that the essentials are lacking. A judicial proceeding wherein it is sought to establish that a marriage contract was lacking in some of its essentials is called an annulment proceeding as distinguished from one which admits the original validity of the marriage, but requests that the contract be declared breached by some conduct on the part of one of the spouses which is inconsistent with its terms. Annulment proceedings under the common law were, therefore, very generally based upon the equitable powers of chancery courts to give relief in respect to contracts generally in cases of fraud, mental incapacity, or want of consent generally. *Mattison* v. *Mattison,* 1 Strob. Eq. 387, 20 S. C. Eq. 387, 47 Am. Dec. 541; *Di Lorenzo* v. *Di Lorenzo,* 174 N. Y. 467, 67 N. E. 63, 95 Am. St. Rep. 609, 63 L. R. A. 92. Such proceedings, being based on a defect in the original

contract, necessarily implied a holding that the contract never did actually become complete, while divorces assume the original binding effect of the contract, but cancel it for some breach of the conditions.

In most of the states, however, there are statutes which specifically set forth the causes which will authorize an annulment of a marriage, and it is quite generally held that where a statute has declared jurisdiction in this respect the court will look to the statute as the measure and limit of its authority. *Stierlen* v. *Stierlen,* 6 Cal. App. 420, 92 Pac. 329; 38 C. J. 1349, and cases cited. The Arizona statute governing annulment is contained in section 2178, Revised Code of 1928, which is in this language:

*"Annulment of marriage.* The superior courts may dissolve a marriage, and may decree the marriage to be null and void, where the cause alleged shall be an impediment rendering such contract void."

It is urged by petitioner that under this section the only thing which will authorize a decree of annulment is one of the causes found in section 2166, Revised Code of 1928. The section reads as follows:

*"Prohibited and void marriages.* The marriage of persons of Caucasian blood, or their descendants, with Negroes, Mongolians or Indians, and their descendants, shall be null and void. The marriage between parents and children, including grandparents and grandchildren of every degree, between brothers and sisters, of the one-half as well as of the whole blood, and between uncles and nieces, aunts and nephews, and between first cousins are incestuous and void. Children born out of wedlock, or the relations thereof, are included within the prohibition."

It is contended by the beneficiary, on the other hand, and this theory was adopted by respondent, that the word "void," being the last word of section 2178, *supra,* really means "voidable" and that her marriage was of that class.

Petitioner insists that the only marriage contracts which may be annulled are those which cannot, under any circumstances, become valid, while respondent claims that annulment applies not only to contracts of that nature, but to those which, though lacking the vital element of consent, may be ratified by the subsequent action of the party who did not originally legally consent thereto. In the case of *Kinney* v. *Lundy,* 11 Ariz. 75, 80, 83, 89 Pac. 496, 498, we had occasion to discuss the meaning of the word "void" when found in an act of our legislature. Therein we said:

" . . . Upon the meaning and construction to be placed upon this word 'void,' as here used, depends the determination of the question before us. In the strictest sense, 'void' means that which has no force and effect. The Century Dictionary gives the following as its definition specifically, in law: 'Without legal efficacy; incapable of being enforced by law; having no legal or binding force.' . . . But the courts very generally have refused to accept this narrower, stricter construction as the one to be adopted as giving proper effect to the intent in the minds of the person or body making use of the word in legal documents or enactments, and have frequently construed it as used in effect in the sense of voidable only, rather than void, where such construction seems more nearly to conform to the probable intent in its use. . . . "

The court proceeds to quote from many cases to this effect, and then continues:

"Many other decisions of like tenor might be cited, but the foregoing are sufficient to show that the courts generally recognize that it is the common practice of both legislatures and courts to make use of the word 'void' as interchangeable with, and as having the meaning of 'voidable,' and with substantially the same force and effect; and that it is not only proper, but that it is the duty of a court to interpret the meaning of the word either strictly or more liberally as the intent shall appear. . . . "

To the same effect is the case of *Yancy* v. *Jeffreys,* 39 Ariz. 563, 8 Pac. (2d) 774. We must, therefore, determine whether our legislature, in section 2178, *supra,* meant to use the word ''void'' in its more restricted sense, which would cover only marriage contracts incapable of ratification, or whether it really meant the more liberal term of ''voidable,'' which would include also those subject to ratification at the will of the injured party, and if the latter be the case, whether the legislature intended the marriage of the beneficiary to fall within the annulment statute.

Paragraph 2110 of the Revised Statutes of 1887 dealt with the subject of annulment in the following language:

''The district court shall have power to hear and determine suits for the dissolution of marriage, *where the causes alleged therefor shall be natural or incurable impotency of the body at the time of entering into the marriage contract,* or any other impediment that renders such contract void, and shall have power and authority to decree the marriage to be null and void.'' (Italics ours.)

Paragraph 2111 of the same statutes states the causes of divorce. Impotency on the part of either party was not given as one of them. In that year then it was the obvious intention of the legislature that impotency at the time of marriage should be a ground of annulment, but not of divorce. It is also plain that the legislature then did not intend to use the word ''void'' in the annulment statute in its strict sense, but rather meant ''voidable,'' for physical incapacity for sexual intercourse usually does not render a marriage void, but voidable merely, and the marriage is regarded as valid until regularly dissolved at the suit of the party conceiving himself or herself wronged. *Martin* v. *Otis,* 233 Mass. 491, 124 N. E. 294, 6 A. L. R. 1340; *Kaiser* v. *Kaiser,* 16 Hun (N. Y.), 602; *Briggs* v. *Morgan,* 3

Phill. 325, 161 Eng. Rep. 1339; *Bennett* v. *Bennett,* 169 Ala. 618, 53 So. 986, L. R. A. 1916C 693.

Had the law remained as it was in 1887, there could be no question that the legislature meant to make any voidable marriage subject to annulment, and that it recognized physical impotency as a proper ground for such a proceeding, and not for a divorce. In 1901, however, it again considered the subject, and substituted for paragraphs 2110 and 2111, *supra,* paragraphs 3112 and 3113, of the Revised Statutes of 1901, the first dealing with annulment, and the second with divorce. It continued in effect the exact language of paragraph 2110, *supra,* with the exception that it removed therefrom the phrase

"where the causes alleged therefor shall be natural or incurable impotency of the body at the time of entering into the marriage contract,"

and placed in paragraph 3113, which gives the grounds for divorce and not for annulment, the following clause, being subdivision 2 of the paragraph:

"When one of the parties was physically incompetent at the time of marriage and the same has continued to the time of the commencement of the suit."

The language of the Statutes of 1901 in regard to annulment and divorce, in so far as these matters are concerned, is identical with that of the Code of 1928. We think it is clear that the legislature used the word "void" in our annulment statute as referring to marriages which were subject to ratification or disaffirmance by the injured party, as well as those which could not be ratified, including specifically in 1887, as a ground for annulment, marriages of the class to which that of the beneficiary belongs, but that in 1901 it determined, for reasons best known to itself, that physical impotency should no longer be a ground for annulment, but rather for divorce.

We hold, therefore, that it is now the law that while all other forms of voidable marriages are subject to annulment, physical incompetency existing at the time of the marriage and continuing to the time of suit is not a ground of annulment, but of divorce only. As to what reasons the legislature had for this change, we cannot say, but it is very evident that this was its intention, and the intent of the legislature must govern. Such being the case, the cause upon which the beneficiary herein secured an annulment of her marriage was not one authorized by law, and the court, of course, had no jurisdiction to render such a judgment. It necessarily follows that the beneficiary is still the wife of Ray Earl Menefee, and is not entitled to set aside the lump settlement which was made by her with the full knowledge and approval of all the parties, including the respondent herein.

The award is set aside and the case remanded for further action.

ROSS, C. J., and McALISTER, J., concur.