470 P.2d 465

**STATE COMPENSATION FUND, Insurer of Alabam Freight Lines, a division of Consolidated Copper State Lines, Petitioner,**

v.

**Barbara J. REED, widow of Donald S. Reed, deceased, Respondent Employee,**

**The Industrial Commission of Arizona, Respondent.**

**No. I CA–IC 360.**

Court of Appeals of Arizona, Division 1, Department B.

June 11, 1970.

Rehearing Denied July 30, 1970.
Review Denied Oct. 13, 1970.

Robert K. Park, Chief Counsel, by Courtney L. Varner, Phoenix, for petitioner State Compensation Fund.

Donald L. Cross, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Stevenson, Warden & Smith, by Robert W. Warden, Flagstaff, for respondent Barbara (Reed) Stone.

HAIRE, Judge.

On this appeal by certiorari from an award of the Industrial Commission, the Court is required to consider the legality of the Commission's award to the widow of a deceased workman, which reinstated the payment of monthly death benefits previously discontinued because of the widow's remarriage.

A.R.S. § 23–1046[1] provides for the award of certain death benefits to the survivors of a deceased workman whose death was caused by a compensable injury. Pursuant to the provisions of that statute, the respondent herein, Barbara J. Reed as the surviving widow of the deceased workman, was originally awarded the sum of $257.52

---

1. All statutory references herein are to statutes in effect prior to January 1, 1969.

monthly until her death or remarriage, with two years compensation in one sum ($6,180.48) payable in the event and at the time of remarriage. This award was entered on January 16, 1968.

On August 12, 1968, Mrs. Reed advised the Commission that she had remarried on August 8, 1968, and requested payment of the lump sum marriage settlement. On October 10, 1968, the Commission entered "Supplemental Findings and Order" (1) terminating monthly death benefits effective August 8, 1968, and (2) awarding to Mrs. Reed the sum of $6,248.23 (lump sum payment of $6,180.48 plus $67.75 for period of August 1, 1968 through August 8, 1968) " * * * to be paid to her in full settlement of all benefits to which she might be entitled under the provisions of the Arizona Workmen's Compensation Law." This latter award became final and the lump sum payment was paid to Mrs. Reed in accordance therewith.

On April 14, 1969, approximately eight months after the remarriage, Mrs. Reed filed with the Commission her "Petition to Reinstate Award". The file discloses that on March 26, 1969, the new husband, Donald R. Stone, had filed in the Coconino County Superior Court a complaint for annulment of his marriage to Mrs. Reed, alleging that the marriage was induced by Mrs. Reed's fraudulent misrepresentations as follows:

"That prior to and at the time of said marriage and when plaintiff consented thereto, defendant falsely and fraudulently represented to plaintiff that she was capable of, and would accept, the care, management and training of plaintiff's retarded son of the approximate age of four (4) years."

The complaint further alleged that such misrepresentations were material, that plaintiff was unaware of their falsity, that he relied thereon, and that thereafter Mrs. Reed refused to accept the care, management or training of plaintiff's retarded son. On that same date, March 26, 1969,

Mrs. Reed filed a one sentence answer to the complaint as follows:

"COMES NOW the defendant and in Answer to plaintiff's Complaint herein, admits the allegations contained therein."

Some seven days after the filing of the complaint and the answer, the Coconino County Superior Court on April 2, 1969, entered a decree of annulment which provided that:

" * * * the marriage existing in form between the plaintiff, DONALD R. STONE, and the defendant, BARBARA JEAN STONE, be and the same is hereby annulled and declared void and of no force, form or effect whatsoever."

The decree stated that it was based upon a finding of the material allegations of the complaint in the plaintiff husband's favor.

As previously indicated herein, twelve days after the entry of the decree of annulment by the court, Mrs. Reed filed her petition with the Commission which in essence recited tender of return to the Commission of the lump sum award of $6,180.-48, and requested that the Commission's prior award of monthly death benefits be reinstated as of the date it was originally terminated. Subsequently, by "Supplement to Petition to Reinstate Award" (filed April 18, 1969) Mrs. Reed requested that:

"It is requested that instead of a return of the $6,180.48 lump sum settlement made on August 8, 1968, that the award of January 16, 1968 be reinstated as of August 8, 1970 (twenty-four months after the lump sum settlement) in the amount of $257.52 monthly until the death or remarriage of petitioner."

On May 1, 1969, there was issued a "Denial of Petition to Reinstate Award". Timely application for hearing was filed, and after formal hearing before the Commission, it entered an award reinstating the monthly death benefits as requested by Mrs. Reed.

Petitioner contends that the Commission erred in reinstating the prior award because the fraudulent misrepresentations al-

leged in the husband's complaint for annulment were not sufficient to give the Superior Court jurisdiction to enter an annulment decree, citing Hallford v. Industrial Commission, 63 Ariz. 40, 159 P.2d 305 (1945).

In a decision preceding Hallford, *supra*, Southern Pacific Co. v. Industrial Commission, 54 Ariz. 1, 91 P.2d 700 (1939), the Arizona Supreme Court first considered whether a widow to whom an award of monthly death benefits had been made under the Workmen's Compensation Laws, and who had thereafter received a lump sum in settlement of the original award upon a remarriage, could have such original award reinstated upon a subsequent annulment of the remarriage. The court specifically stated that upon a valid legal annulment and a tender back of the lump sum award, a widow would be entitled to a reinstatement of such an award. However, upon the facts before it, the court held that the remarriage was not, under Arizona law, subject to annulment for the cause set forth in the complaint (fraudulent misrepresentations concerning physical impotency) and that the Superior Court therefore had no jurisdiction to enter the decree of annulment. For that reason the Arizona Supreme Court set aside the Industrial Commission award which had reinstated the original award, holding that the decree of annulment was void on its face and subject to collateral attack in the Industrial Commission proceedings, and that the widow was still married notwithstanding the purported decree of annulment.

The Arizona Supreme Court next considered precisely the same question in Hallford v. Industrial Commission, *supra*, and again reach the same result. In that case the complaint for annulment of the remarriage filed by the widow in the Superior Court alleged fraudulent misrepresentations by the husband concerning his condition in life and " * * * that he stated to plaintiff that he was making sufficient money to support plaintiff, and that he would continue to make a home for her

and support plaintiff * * *"; that after marriage " * * * upon learning that defendant had misrepresented his condition in life, and that he had misrepresented the fact that he could and would support plaintiff, plaintiff caused defendant to remove himself from her home * * *." Based upon these allegations, at the hearing on the petition to reinstate, the Commission concluded that the Superior Court was without jurisdiction to enter the annulment decree and denied the petition for reinstatement. The Arizona Supreme Court affirmed this action by the Commission, stating:

> "Whether or not the award was properly made rests upon the force and effect of the decree of annulment. Unless the judgment is void, it is binding upon the commission and may not be attacked collaterally. On the other hand, a void judgment is no judgment at all and may be attacked in a collateral proceeding. This court has repeatedly stated that three elements must occur or a judgment is void upon its face, and hence subject to be attacked at any time. These elements are (1) jurisdiction of the subject matter of the case, (2) of the persons involved in the litigation, and (3) to render the particular judgment given." (Citations omitted).

\*     \*     \*     \*     \*     \*

> "In the case at bar there is no dispute as to the facts. The defendant failed to appear or defend. The judgment discloses that it is based upon the facts alleged in the complaint. If, under these conceded facts, as a matter of law the court had no power to grant a decree of annulment, the decree is void under the decisions above cited. The power of the superior courts to annul a marriage is found in Section 27–801, A.C.A.1939:

> > 'The superior courts may dissolve a marriage, and may decree the marriage to be null and void, where the cause alleged shall be an impediment rendering such contract void.'

"No facts are set out in the complaint or found in the judgment of any impediment which renders the marriage contract between the petitioner and Williams void. Allegations of false and fraudulent representations as to station and condition in life do not constitute a ground for annulment under the terms of the statute. Such misrepresentations cannot be considered as an impediment to the marriage contract." * * * (Citations omitted).

"In the case at bar the complaint discloses that the parties lived together as husband and wife from the date of marriage until February 17, 1943, a period of approximately three months. It may be presumed that the marriage was fully consummated. Petitioner has cited cases disclosing that marriage contracts entered into by reason of fraud have been held voidable rather than void. We think it unnecessary to discuss these decisions, however, because here the fraud or misrepresentation alleged *was not of such a character as goes to the very essence of the marriage relation so as to be in effect an impediment to the contract.* The decision cited by petitioner arose under statutes specifically authorizing annulment where the marriage is induced by false representations. Annulment, under our statute, can be allowed only where the cause is of such a character as to be an impediment to the marriage contract." (Emphasis added). (63 Ariz. at 42–44, 159 P.2d at 306–307).

█ The above-cited decisions of the Arizona Supreme Court holding that a decree of annulment may be collaterally attacked in an Industrial Commission proceeding are binding on this Court. McKay v. Industrial Commission, 103 Ariz. 191, 438 P.2d 757 (1968).

Counsel for the respondent widow has not cited any cases holding that fraudulent representations by a prospective spouse

that he or she would accept, care for and train a child by a prior marriage constitute such misrepresentation as to go "* * * to the very essence of the marriage relation so as to be in effect an impediment to the marriage contract * * *" as required under the Arizona cases and the statute covering annulments.[2]

Considering the fact that in Hallford, *supra*, the Arizona Supreme Court held that fraudulent misrepresentations by the prospective husband that he would support and make a home for the prospective *wife* (one of the parties to the marriage contract) did not go to the essence of the contract so as to constitute an impediment thereto, we do not see how misrepresentations relating to the care and training of one of the children of a prospective spouse can be said to constitute such an impediment. The only case we have found relating to fraudulent misrepresentations concerning the care of children by a prior marriage is Brown v. Brown, 34 N.J.Super. 261, 112 A.2d 1 (1954). In that case the New Jersey court held that the allegedly fraudulent misrepresentation of the husband prior to a consummated marriage that he would adopt the wife's illegitimate child did not go to the essence of the marriage relationship, and was therefore not grounds for an annulment. Of course this is not to say that such misrepresentations might or might not constitute grounds for divorce.

█ While we agree with the petitioner that under the Arizona law as set forth in Southern Pacific Co. and Hallford, *supra*, the decree of annulment was void and subject to collateral attack and could not constitute a. basis for the Commission's reinstatement of the original award, we prefer not to base our decision setting aside the Commission's award entirely upon that basis. In our opinion, there is a further reason why Mrs. Reed's petition to

---

2. A.R.S. § 25–301 provides as follows:
"Superior courts may dissolve a marriage, and may adjudge a marriage to be null and void when the cause alleged constitutes an impediment rendering the marriage void."

reinstate the original award should not be granted.

The facts show that Mrs. Reed petitioned the Commission for payment of the lump sum remarriage settlement with full notice, as stated in the Commission's written order served upon her, that said payment was " * * * in full settlement of all benefits to which she might be entitled under the provisions of the Arizona Workmen's Compensation law." In the Southern Pacific Co. decision, *supra,* the court discussed the question of whether the receipt of the lump sum settlement under such circumstances estopped the widow from later asking that the original award be reinstated after an annulment of her remarriage. The court concluded that under the particular circumstances of that case, no estoppel was present, stating:

"Estoppel only exists when the party sought to be estopped, with full knowledge of all the facts bearing on the situation, takes a position which is inconsistent with one assumed later. In the present case, there was nothing except surmise to show that the beneficiary had any knowledge at the time she made her settlement of the facts upon which she later based her suit for annulment. Under such circumstances, we think the acceptance of the lump settlement did not estop her from asking for a reinstatement of the original award." (54 Ariz. at 7, 91 P.2d at 702).

It is important to note that in both Southern Pacific Co. and Hallford *supra,* there were fact situations in which the widow was purportedly the innocent party insofar as concerns the alleged grounds for annulment. Therefore, as stated in the Southern Pacific Co. decision, there was no basis for finding an estoppel. However, in the case at hand, the fact situation is exactly the opposite.

The complaint for annulment was signed and verified by the new husband, and the answer admitting all allegations contained in the complaint was personally signed by Mrs. Reed. If we are to believe the alle-gations and admissions contained in these pleadings, Mrs. Reed, *at the time she made the lump sum settlement,* knew all the facts which led to the subsequent suit for annulment. She knew, *at that time,* that she had fraudulently induced her new husband to marry her, and notwithstanding this knowledge, she represented to the Commission that she had entered into a valid contract of marriage. Acting upon her representations the Commission awarded to her the lump sum payment, to which, under the theory she now espouses, she was not entitled. The payment of this lump sum payment under such circumstances constituted a definite detriment to the Commission, for example, the risk of having paid more than it might otherwise have had to pay—the continuing monthly payment obligation might possibly have been terminated during the interim period by death.

■ These circumstances constitute the classic elements of estoppel and in our opinion the acceptance of the lump sum settlement estopped Mrs. Reed from subsequently urging the invalidity of her remarriage upon the grounds of her own wrongdoing as a basis for reinstatement of the Commission's original award.

The award of the Commission is set aside.

EUBANK, P. J., and JACOBSON, J., concur.