476 P.2d 902

STATE COMPENSATION FUND and Waco Equipment Company, Inc., Petitioners,

v.

Dolores J. FOUGHTY, Respondent Claimant,

The INDUSTRIAL COMMISSION of Arizona, Respondent.

No. 1 CA–IC 472.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 19, 1970.

Rehearing Denied Dec. 10, 1970.

Review Denied Jan. 26, 1971.

Robert K. Park, Chief Counsel, State Compensation Fund, by Harlan J. Crossman, Phoenix, for petitioners.

Donald L. Cross, Phoenix, Chief Counsel, The Industrial Commission of Arizona, for respondent.

Walter F. Kessler, Phoenix, for respondent-claimant.

STEVENS, Judge.

The issue before this Court is whether misrepresentations as to religious beliefs, the falsity of which are discovered after a marriage ceremony, can be such an impediment to the marriage as to constitute grounds for annulment.

In this opinion we will refer to Dolores J. Foughty as the widow or as the claimant. The claimant and Roy Foughty were joined in marriage on 18 June 1947. Two children were born of this union. Roy Foughty died on 31 August 1963 as the result of an industrial accident. An award was entered in favor of the claimant, who was then his surviving widow, and in favor of the minor children. This award was entered on 7 October 1963. A portion of the evidence submitted in support of the award established that the marriage was performed by a pastor of the Lutheran Church.

The claimant and one Rhodes were the parties to a marriage ceremony performed on 8 February 1967 in the American Lutheran Church by a pastor of the church. The claimant promptly advised the Commission as to the marriage ceremony, the advice including a copy of the marriage certificate. On 9 March 1967 the Commission entered its supplemental award granting the claimant "two years compensation in one sum" pursuant to A.R.S. § 23–1046(A) (2).

The record is silent as to the period of time that the claimant and Rhodes lived together as husband and wife. For a time, after the marriage ceremony, the compensation checks for the Foughty minor children were sent to the claimant's address in the State of Maryland. On 12 August 1968 the claimant requested that her address be changed to Glendale, Arizona.

The claimant filed an action for annulment in the Superior Court for Maricopa County on 26 December 1968. Therein Rhodes was named as the defendant. The record before the Commission discloses service of process upon Rhodes and the entry of his default. The record discloses that the claimant was sworn and testified in support of her complaint on 3 April 1969 and that on that date a decree of annulment was signed. The

decree was filed with the Clerk of the Superior Court the following day.

Thereafter the claimant pursued the course of action before the Industrial Commission which was necessary to secure the restoration of her widow's benefits. By this time the procedural aspects of the matter were controlled by the amendments to the Workmen's Compensation Law which became effective 1 January 1969.

A hearing officer conducted the hearing. The claimant and her counsel were present. The Fund was represented. The Fund offered into evidence a certified copy of the records of the annulment proceedings in the Superior Court for Maricopa County. Based upon these records the Fund urged, and it now urges, that the decree of annulment was void as a matter of law and that the decree was therefore subject to collateral attack. The hearing officer ruled in favor of the claimant. The Fund sought a review by the Commission. The Commission affirmed the hearing officer and the matter was brought to this Court for review by certiorari.

The Arizona statutes on the subject of annulment are concise and consist of but one section, A.R.S. § 25–301, which we quote:

"Superior courts may dissolve a marriage, and may adjudge a marriage to be null and void when the cause alleged *constitutes an impediment rendering the marriage void.*" (Emphasis Added)

The Arizona cases in relation to the right of a widow who has remarried to seek restoration of her widow's benefits after a decree of annulment are:

Southern Pacific Company v. Industrial Commission of Arizona, 54 Ariz. 1, 91 P.2d 700 (1939);

Hallford v. Industrial Commission of Arizona, 63 Ariz. 40, 159 P.2d 305 (1945); and

State Compensation Fund v. Reed, 12 Ariz.App. 317, 470 P.2d 465 (1970) (re-

view denied). We quote first from the *Southern Pacific* case:

"We hold, therefore, that when a widow who is entitled to compensation under the Arizona law has remarried and received a lump settlement of the award, a legal annulment of the marriage will entitle her to have the original award reinstated upon tendering back the amount she has received as lump settlement." 54 Ariz. at page 6, 91 P.2d at 702.

\* \* \* \* \* \*

"Marriage is almost universally said by the authorities to be a 'civil contract,' but this language is perhaps, strictly speaking, inaccurate. It may more properly be defined as a status created by and based upon a civil contract. Hilton v. Roylance, 25 Utah 129, 69 P. 660, 58 L.R.A. 723, 95 Am.St.Rep. 821; 38 C.J. 1273, and cases cited. Since it is founded upon contract the question of whether the status actually exists depends upon the rules governing the making of the contract. Two of the essentials of a valid contract are that the parties have capacity to enter into it, and that they actually consent thereto and these principles apply to the contract upon which marriage is based. It, therefore, follows logically that if a marriage contract, though proper in form, is entered into by parties who have not the capacity to consent thereto or who, for some reason or another, have consented in form but not in fact, the marriage contract may be set aside like any other one, on the ground that the essentials are lacking." 54 Ariz. at page 8, 91 P.2d at 703.

\* \* \* \* \* \*

"It is also plain that the legislature then did not intend to use the word 'void' in the annulment statute in its strict sense, but rather meant 'voidable,' \* \* \*." 54 Ariz. at page 11, 91 P.2d at 704.

In the *Hallford* case the claimed ground for an annulment was fraud and misrep-

resentation as to the new husband's financial condition. In that case our Supreme Court stated:

"* * * Unless the judgment is void, it is binding upon the commission and may not be attacked collaterally. On the other hand, a void judgment is no judgment at all and may be attacked in a collateral proceeding. This court has repeatedly stated that three elements must occur or a judgment is void upon its face, and hence subject to be attacked at any time. These elements are (1) jurisdiction of the subject matter of the case, (2) of the persons involved in the litigation, and (3) to render the particular judgment given." 63 Ariz. at page 42, 159 P.2d at 306.

"In the case at bar there is no dispute as to the facts. The defendant failed to appear or defend. The judgment discloses that it is based upon the facts alleged in the complaint.

*　　*　　*　　*　　*　　*

"No facts are set out in the complaint or found in the judgment of any impediment which renders the marriage contract between the petitioner and Williams void." 63 Ariz. at page 43, 159 P.2d at 306.

"* * * here the fraud or misrepresentation alleged was not of such a character as goes to the very essence of the marriage relation so as to be in effect an impediment to the contract." 63 Ariz. at page 44, 159 P.2d at 307.

In our *Reed* case the new husband secured the decree of annulment which was based upon allegations which the former widow admitted to be true. The basis of the new husband's complaint was that at the time of the marriage the former widow had no intention of accepting the responsibility for the care of the new husband's minor child. Thus she had that state of mind when she applied to the Industrial Commission for the two-year lump sum payment. In the opinion of the majority in the case now under consideration, the estoppel feature of the

*Reed* case is of controlling significance. We do not have that feature in our current matter. In our current matter the former widow is the innocent party.

What then is the situation before us? We quote from two paragraphs of the complaint in annulment:

"II

"That on or about February 8, 1968, the parties entered into a purported marriage relationship in Arlington, Virginia; but no children have been born as issue of this marriage;

"III

"That sometime following the marriage ceremony it first became known to the Plaintiff that the Defendant professed atheistic principles, including the theory that he was GOD himself; that prior to the marriage ceremony, and during the courtship period, the Defendant represented himself to be a religious man, a Christian such as the Plaintiff, and a believer in the theological ideals of Christianity and the accepted Christian version of the Supreme Deity; that this and other material and gross misrepresentations on the part of the Defendant which first became known to the Plaintiff subsequent to the marriage ceremony were and are of such magnitude as to constitute an impediment to the purported marriage, to the extent that had such later-discovered facts been known to the Plaintiff such marriage ceremony would never have occurred, there being no meeting of the minds; that the said purported marriage is, therefore, a nullity and void ab initio;"

The decree of annulment, as a predicate therefor, recited, among other things:

"Evidence having been presented to the Court in support of the Complaint, and good cause appearing therefor, * *."

It will be remembered that the complaint in the Superior Court alleged "* * * that this and other material and gross misrepresentations on the part of the De-

fendant * * * were and are of such magnitude as to constitute an impediment to the purported marriage to the extent that had such later-discovered facts been known to the Plaintiff such marriage ceremony would not have occurred, there being no meeting of the minds * * *." Prior to the hearing the Claims Examiner Supervisor wrote to the claimant's attorney stating in part:

"Before referring the matter for decision, it will be necessary that we be advised of the grounds on which the annulment was granted,"

to which counsel replied,

"Please be advised that the Superior Court, in granting the judgment of annulment, did not make a finding as to the specific grounds for granting the annulment. However we did allege and prove gross fraud and misrepresentation in the enticement into the marriage, which the defendant never intended to consummate."

Again we note that the claimant was not called by the Fund at the hearing held by the hearing officer, she having been eligible to be called had the Fund so desired. We do not know the nature and extent of the evidence which the claimant presented to the Superior Court in support of her allegations.

■ The Fund had the burden of proof in its effort to sustain its collateral attack.

We note that in the *Southern Pacific* case the Supreme Court pointed out that the basis upon which the decree of annulment was sought had one time been grounds for annulment and by an amendment of the statute those grounds had been removed as grounds for annulment and had been made grounds for a divorce. We do not find the same situation in the case before us. A.R.S. § 25–312 which sets forth the grounds for divorce does not embrace the fact situation which we now have before us. We do not intend to imply, and we refrain from expressing an opinion on the proposition, that a stat-

utory ground for divorce excludes that state of facts from being a valid basis for an annulment.

■ We hold that the complaint in the Superior Court alleged facts upon which an annulment may be predicated. We have not been cited to cases which are expressly in point on either side of this issue. We hold that a person who entertains deep religious convictions and who goes through a marriage ceremony performed by a pastor of her church then believing that her new spouse is of like religious convictions and shortly thereafter learns the falsity thereof has established a sufficient absence of mutuality to render the marriage void, or at least voidable, by reason of the absence of a meeting of the minds.

The award is affirmed.

DONOFRIO, P. J., concurs.

JACOBSON, Judge (specially concurring).

I concur in the result.

In this case, both the complaint and judgment were couched in such language as to require the State Compensation Fund to present further testimony showing exactly upon what basis the judgment was entered. This is unlike the complaint and judgment in State Compensation Fund v. Reed, 12 Ariz.App. 317, 470 P.2d 465 (1970) (review denied) where the exact grounds upon which the annulment was based were ascertainable from the complaint and judgment. The Fund in this case failed to show exactly upon what basis the trial court entered its judgment and therefore in my opinion did not sustain its burden of establishing a valid collateral attack on the decree of annulment. For this reason alone I would uphold the award of the Industrial Commission.

However, I cannot concur in the conclusion reached by my colleagues that prior false and fraudulent misrepresentation of religious beliefs is a sufficient

ground, standing alone, to sustain a decree of annulment under our statute.

While the case of Southern Pacific Company v. Industrial Commission of Arizona, 54 Ariz. 1, 91 P.2d 700 (1939), does, as quoted in the majority opinion, speak of marriage as a contract and that those elements which would void an ordinary civil contract could void a marriage contract, it is clear from Hallford v. Industrial Commission of Arizona, 63 Ariz. 40, 159 P.2d 305 (1945), exactly of what these acts must consist:

" * * * Petitioner has cited cases disclosing that marriage contracts entered into by reason of fraud have been held voidable rather than void. We think it unnecessary to discuss these decisions, however, because here the fraud or misrepresentation alleged was not of such a character as goes to the very essence of the marriage relation so as to be in effect an impediment to the contract. The decisions cited by petitioner arose under statutes specifically authorizing annulment where the marriage is induced by false representation. Annulment, under our statute, can be allowed only where *the cause is of such a character as to be an impediment to the marriage contract.*" (Emphasis Added)

Obviously, the belief or disbelief in God is not an impediment to marriage itself, for numerous valid marriages are performed in civil ceremonies where the question of one's belief in a supernatural being is never called into question. Also the very nature of the ground (i. e. belief in a supreme deity), is one which traditionally has been subject to serious intellectual discussion and disagreement. To say that to fraudulently take one side of this argument or the other is an impediment to two people entering into a marriage contract is to ignore the traditional function of marriage, that is to provide the responsible unit for the care and rearing of children.

Having stated this, I can well understand and appreciate the mental anguish and sense of loss that might well occur to a deeply religious person when he or she finds out that the other partner to the marriage does not believe in a principle which can be a basic foundation for a happy and successful marriage. Such mental anguish and sense of loss may very well be a ground for dissolving that marriage, but not, in my opinion, a ground for saying the marriage never existed.

Moreover, to add this rather subjective, nebulous ground to the grounds for annulment is, to me, dangerous precedent. While no serious consequences flow from our granting an annulment in this case (except monetarily to the Fund), the granting of an annulment rather than a divorce in a given case may have some drastic consequences on a relationship which has traditionally enjoyed a public interest in its maintenance, or in the case of severance, the rights flowing from that previous married status, for example community property rights.

From the standpoint of traditional legal precedent, the only jurisdiction which I have found which grants an annulment because of false and fraudulent misrepresentations as to religious tenets is New York. See Williams v. Williams, 194 Misc. 201, 86 N.Y.S.2d 490 (1947); Taylor v. Taylor, 181 Misc. 306, 47 N.Y.S.2d 401 (1943). However, cases dealing with domestic relations from that jurisdiction are suspect, because of New York's longstanding limited ground for divorce (adultery only).

For the foregoing reasons, I am unable to concur that the belief or disbelief in a supreme deity is an impediment to the marriage contract which would sustain a decree of annulment.