592 P.2d 1270

Edward A. JACKSON, deceased, Carmen C. Jackson, widow, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Galyen Enterprises, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 1773.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 31, 1978.

Rehearing Denied Oct. 5, 1978.

Review Granted Oct. 31, 1978.

Nebeker, Hunt, Stanley & Hossler, Ltd. by David J. Hossler, Yuma, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Don A. Fendon, Phoenix, for respondents employer and carrier.

OPINION

SCHROEDER, Presiding Judge.

This is a claim by a widow for reinstatement of death benefits following the annulment of her second marriage. The Industrial Commission denied the claim on the grounds that the annulment was void, and she seeks review in this Court.

Petitioner, Carmen C. Jackson, is the widow of Edward A. Jackson who was killed in a 1970 industrial accident while employed by the respondent, Galyen Enterprises. She received death benefits pursuant to A.R.S. § 23–1046. In March, 1975, the petitioner married Raymond T. Haugh, and thereafter, as authorized by A.R.S. § 23–1046(A)(2) received a lump sum award. Less than eight months later, she petitioned for an annulment in the Superior Court of Yuma County. In the petition, she alleged that Haugh had made false and fraudulent protestations of love solely for the purpose of obtaining the money she would receive in the lump sum award. The petition stated in part that the marriage

"was induced by said fraudulent representations on the part of the Respondent and that the Respondent entered into said marital contract with Petitioner solely for

the purpose of obtaining her compensation benefits and not as a result of any love or affection that he had for the Petitioner . . . ."

Haugh was served with a copy of the petition but made no appearance. The annulment was granted in February, 1976.

Following the granting of the annulment, petitioner applied for reinstatement of her death benefits pursuant to the authority which permits such an application following an annulment of a second marriage and the tendering back of the lump sum award. *E. g., Hallford v. Industrial Comm'n,* 63 Ariz. 40, 159 P.2d 305 (1945); *Southern Pacific Co. v. Industrial Comm'n,* 54 Ariz. 1, 91 P.2d 700 (1939); *United States Fidelity and Guaranty Co. v. Industrial Comm'n,* 25 Ariz. App. 244, 542 P.2d 825. (1975).

The hearing officer denied the reinstatement, holding that the annulment was invalid. He found that it was based upon "false statements of love and affection," and that such statements did not constitute such an impediment to the marriage as to make the marriage void within the meaning of our annulment statute. A.R.S. § 25–301. Petitioner now seeks review in this Court.

■ Petitioner first argues that the carrier should not have been permitted collaterally to attack the annulment decree entered by the superior court. Generally collateral attacks on court judgments are maintained in courts, and not in administrative agencies, and a final judgment cannot be attacked on the ground that it was based on a mistake of law. *Walker v. Davies,* 113 Ariz. 233, 550 P.2d 230 (1976); *Bates v. Mitchell,* 67 Ariz. 151, 192 P.2d 720 (1948); *Roberson v. Teel,* 20 Ariz.App. 439, 513 P.2d 977 (1973). An outsider might well be surprised by the Industrial Commission's consideration of the carrier's collateral attack on the annulment judgment, particularly since there was no question concerning the superior court's jurisdiction over the subject matter and the parties. *See generally* 13, Wright, Miller, & Cooper, Federal Practice and Procedure § 3536 (1975). We are aware of no other areas of the law in which Arizona courts have permitted an administrative agency to treat a superior court judgment as a nullity.

Nevertheless, Arizona courts for many years have implicitly sanctioned such a procedure in situations such as this, involving a claim for reinstatement of death benefits after an annulment of a second marriage. *Hallford v. Industrial Comm'n,* 63 Ariz. 40, 159 P.2d 305 (1945); *Southern Pacific Co. v. Industrial Comm'n,* 54 Ariz. 1, 91 P.2d 700 (1939); *State Compensation Fund v. Reed,* 12 Ariz.App. 317, 470 P.2d 465 (1970). Although we find the practice extremely disquieting, any reexamination must be done by the Supreme Court, and not by this Court. *McKay v. Industrial Comm'n,* 103 Ariz. 191, 438 P.2d 757 (1968).[1]

The scope of the Industrial Commission's inquiry into annulments is, however, limited under our cases. The key consideration has consistently been whether the grounds alleged for the annulment were proper. Thus, in *Hallford v. Industrial Comm'n,* for example, the Court affirmed an Industrial Commission holding that misrepresentations of ability to provide for the wife were not sufficient grounds for annulment. In *State Compensation Fund v. Reed,* false representations of ability to care for a retarded child were considered insufficient grounds. On the other hand, in *Means v. Industrial Comm'n,* 110 Ariz. 72, 515 P.2d 29 (1973),

---

1. This Court's opinion in *State Compensation Fund v. Reed,* 12 Ariz.App. 317, 470 P.2d 465 (1970), suggests an alternative approach which would permit the Industrial Commission to refuse the reinstatement under some circumstances, without passing upon the validity of the annulment itself. In *Reed* the Court took the view that, independent of the annulment deficiencies, the reinstatement of benefits was improper on the additional ground of estoppel. The claimant herself was the party who had fraudulently induced the marriage while at the same time representing to the Commission that the marriage was valid for the purpose of seeking a lump sum payment. Thus, without questioning the binding nature of the annulment decree, the Commission might well deny reinstatement of benefits where the party seeking reinstatement has been guilty of fraud or bad faith. No such circumstances are suggested in this case.

**6**

impotency was considered adequate grounds, and in *State Compensation Fund v. Foughty,* 13 Ariz.App. 381, 476 P.2d 902 (1970), allegations of false representations concerning religious convictions were sufficient to support the annulment.

The question which this Court must decide is whether the Commission erred in holding that this annulment was based upon improper grounds. In *Means v. Industrial Comm'n,* our Supreme Court took a liberal view of permissible grounds for an annulment in Arizona, stating that "any grounds rendering the marriage void or voidable should be available to grant an annulment of marriage." 110 Ariz. at 75, 515 P.2d at 32. The Court also stated that an annulment should be permitted when one party has made a false representation which frustrates or defeats the "fundamental purpose of the injured party in entering into the marriage . . . ." *Id.* at 74, 515 P.2d at 31. The opinion stressed that annulment rests within the inherent equity power of the court.

In this case, the ground for the annulment was that Haugh had fraudulently induced petitioner to marry him in order to obtain her lump sum settlement money. In our view, such conduct would constitute a fundamental impediment to the marriage. Annulment is generally permissible when one of the parties is motivated

> "[n]ot by the normal desires of a person entering into the marriage relation, but by some ulterior and unworthy purpose, such as that of fraudulently obtaining property of the other party or of improperly gaining some advantage which inheres in a matrimonial state." 3 Nelson, Divorce and Annulment § 31.43, at 329 (1945) (footnote omitted).

Thus, this annulment was based not merely on false representation of love and affection, but upon such false representations coupled with a fraudulent intent to deprive petitioner of her property. These grounds were sufficient to form the basis of :

an annulment under the standards enunciated by our Supreme Court in *Means.*

The award is set aside.

DONOFRIO and WREN, JJ., concurring.