Hood *v.* Hood.

4-7304                                                   178 S. W. 2d 670

Opinion delivered March 13, 1944.

*M. P. Watkins,* for appellant.

*J. J. Mardis* and *Edward S. Maddox,* for appellee.

ROBINS, J.  On December 12, 1942, appellant, Robert Hood, and appellee, Mary Hood, were married. Robert Hood was born on May 10, 1925, and Mary Hood was born on January 17, 1930, so that when the marriage occurred Robert Hood had not arrived at his eighteenth birthday and Mary Hood was under thirteen years of age. They lived together as husband and wife until April 9, 1943, at which time they separated. On June 1, 1943, Susie Holt, as mother and next friend of Robert Hood, instituted this suit in the chancery court alleging that at the time of the said marriage neither of the parties was capable in law of contracting a valid marriage for the reason that neither had arrived at the required age. A guardian *ad litem* was appointed to represent appellee, and answer was filed on her behalf denying all the allegations of the complaint.

The chancery court made a finding that the respective ages of the parties were as above stated, and further that "the defendant, Mary Hood, is pregnant with

child as a result of sexual intercourse with the plaintiff and is expected to give birth to a child on or about the 19th day of November, 1943, and that the petition of plaintiff should be denied and that said marriage should not be annulled as it would be against public policy to do so, in view of the pregnant condition of the defendant, . . ." A decree dismissing the complaint was entered; from which decree this appeal is prosecuted.

The case was tried on the depositions of Mrs. Agnes Allred, mother of appellee Mrs. Susie Holt, mother of appellant, and T. L. Smith, county superintendent of education.

Mrs. Allred testified in substance that appellee was born on January 17, 1930; that she married appellant on December 12, 1942, and lived with him as his wife until April 9, 1943.

Mrs. Holt testified that appellant was born on May 10, 1925; that he enlisted in the Army on July 23, 1943, and was, at the time she gave her testimony, in the United States Army.

Mr. Smith testified that his record showed that appellee was born on January 17, 1930.

A copy of the original birth certificate of appellant showing his age to be as stated by his mother was introduced as was a copy of the affidavit for marriage license signed by both appellant and appellee and stating that on that date (December 12, 1942) appellant was nineteen years of age and appellee was eighteen years of age.

There was also filed and considered by the court as part of the evidence a letter, which, though not introduced or identified by any witness, appeared to have been written by appellant to appellee. This letter, dated at Camp Abbot, Oregon, on August 14, 1943, is as follows:
"Hello, Mary.

"I got your letter today and was surprised to hear from you.

"No, I am not mad at you, and never was. We just had a quarrel. I am now in Oregon, and it sure is

cold up here. Mary, by the time this letter gets there you may be Miss Allred again and not Mrs. Mary Hood, but I hope not. If you are still my wife write back and tell me.

"Robert Hood,

38510800,

Co. C 54th ET BN,

Camp Abbot, Oregon.

"P. S. Mary, be sure and write back and tell me if that annullment came off August 6, and did you go to town that day.

"Answer soon,

"Robert Hood."

By act No. 32 of the General Assembly of Arkansas, approved February 6, 1941, (page 66), § 9017 of Pope's Digest was amended so as to read as follows:

"Section 9017. Every male who shall have arrived at the full age of 18 years, and every female who shall have arrived at the full age of 16 years, shall be capable in law of contracting marriage; if under those ages, their marriages shall be absolutely void.

"Provided that males under the age of 21 years and females under the age of 18 years shall furnish the clerk, before the marriage license can be issued, satisfactory evidence of the consent of the parent or parents or guardian to such marriage, and, in all cases where the consent of the parent or parents or guardian is not provided or there shall have been a misrepresentation of age by a contracting party, such marriage contract may be set aside and annulled upon the application of the parent or parents or guardian to the chancery court having jurisdiction of the cause.

"The consent of both parents of each contracting party shall be necessary before such marriage license can be issued by the clerk unless they have been divorced and custody of the child awarded to one of the parents exclusive of the other or unless the custody of the child has been surrendered by one of the parents through

abandonment or desertion, in which cases the consent of the parent who has custody of the child shall be sufficient.''

Section 2 of act No. 404 of the General Assembly of the State of Arkansas, approved March 27, 1941, (page 1172), is as follows:

''Section 2. No license shall be issued to persons to marry unless and until the female shall attain the age of 16 years and the male the age of 18 years and then only by written consent by a parent or guardian until the male shall have attained the age of 21 years and female the age of 18 years.''

In support of the decree of the lower court it is argued: First, that appellant is estopped, by his fraudulent conduct in making a false affidavit as to his age, from seeking to annul the marriage; second, that appellant should be denied relief in equity because he comes into court with unclean hands; and, third, that the annulment of this marriage would be contrary to public policy.

The first two of these contentions were considered by this court in the case of *Kibler* v. *Kibler,* 180 Ark. 1152, 24 S. W. 2d 867, which was an action brought by Burl Kibler, a minor, through his mother and natural guardian and next friend to annul his marriage on the ground of duress and also on the ground of nonage. In holding that Burl Kibler was not estopped by his misrepresentation as to his age, the court quoted from 9 R. C. L., p. 275, as follows: ''It is usually recognized that an infant is not concluded by false representations of his age so as to bind him by a contract with him entered into on the faith of such representations. And, according to the better view, an infant incapable for want of age of entering into a valid marriage is incapable also of estopping himself by a fraudulent declaration of his age from asserting its invalidity in an action to annul it brought under a statute with the sole proviso that there must have been no voluntary cohabitation after the attainment of the age of consent. On the question as to when a suit may be brought to annul a marriage for

want of legal age on the part of the complainant, there is some support, especially in the early cases, for the position that the complainant cannot be heard to assert this right until he or she has reached the age of legal consent. According to the prevailing and better view, however, a party marrying before the legal age of consent may disaffirm the marriage before reaching that age, and avoid it *in toto,* and a suit for its annulment may be brought through a guardian before the legal age is attained. On principle, this view seems both logical, and in accord with public policy.''

In the same case this court said: ''It is insisted that the relief prayed should be denied, because the minor has come into court with unclean hands, and that it is inequitable to grant him this relief. A similar contention was made in the case of *Swenson* v. *Swenson,* 179 Wis. 536, 192 N. W. 70. A child was born in that case of a marriage contracted while the father was under age prescribed by the laws of the state of Wisconsin, and there was an appeal from a decree annulling the marriage, but providing for the maintenance of the child. For the reversal of this decree it was insisted that the court had erred: 'Because the marriage will not be annulled as a matter of right to plaintif; (b) because plaintiff did not come into court with clean hands; (c) because plaintiff is estopped by his conduct to question the validity of the marriage; and (d) because in divorce actions the state has a substantial, well-recognized interest, and a court cannot lend its assistance in perpetrating a fraud upon a party.' In overruling these contentions the Supreme Court of Wisconsin said: 'It is argued on behalf of the defendant that the language of § 2351, ''a marriage may be annulled for any of the following causes,'' is permissive; that it therefore vests in the court a discretion to say whether or not a marriage, where one or both of the parties is below the age of consent, should or should not, depending upon the circumstances of the case, be annulled. A moment's consideration is sufficient to establish the invalidity of this contention. The statute is not one conferring jurisdiction upon the court. It is one defining and establishing the

rights of parties. If a party plaintiff by sufficient proof establish his right to have his marriage annulled under the provisions of § 2351, and the court refused to grant the relief, the court would be just as much in error, as it would be if it refused to grant a divorce under the provisions of § 2356, assuming that cruel and inhuman treatment was by the finding of the court, duly and properly established. The only condition attached by the statute to the right of a party to have a marriage voidable for nonage of one or both of the parties annulled is that the marriage shall not have been confirmed by the party seeking the relief after arriving at the age of consent, which in the case of the wife is 15 years and in the case of the husband 18 years.' We think our statute should receive a similar construction, and the duty of the court to annul the marriage is plain, because the party asking it was under the age required by law for contracting a valid marriage when this relief was prayed, . . .''

As to the annulment of a marriage of minors being contrary to public policy, it may be said that the public policy of the state is fixed by the Legislature. The Legislature of this state has declared that any marriage contracted by a male under eighteen years or by a female under sixteen years of age shall be void, and in the act declaring such marriages to be void no exception in cases where children are born as a result of such marriages is made.

The annulment of a marriage does not bastardize the offspring of such a marriage. On the contrary, by statute, it is provided (§ 4342 of Pope's Digest of the laws of Arkansas): "The issue of all marriages deemed null in law, or dissolved by divorce, shall be deemed and considered as legitimate.'' Nor could appellant, by procuring an annulment of the marriage between himself and appellee, divest himself of his obligations to support and maintain the child born as a result of said marriage. In the case of *Kibler* v. *Kibler, supra,* the court said: "So here, we hold that, when this minor contracted a voidable marriage, he assumed the same obligations which the law imposes upon an adult, so far as issue is

concerned, and while the law permits him to be relieved of his obligations as a husband, it does not relieve him from those of a father."

While the marriage of a person under the minimum age for contracting marriage as fixed by law is said to be void, by the weight of authority it is held that such marriage is not a nullity, but is void only from the time it is so declared by a court of competent jurisdiction. Accordingly it is generally held that, where one or both of the parties to a marriage is of nonage at the time of the marriage, but they continue to cohabit as husband and wife after attaining the age at which a marriage would be valid, this amounts to a ratification of the marriage and it thereupon becomes valid. "When a party to the voidable marriage contracted within nonage reaches the age of consent, he may elect to ratify or repudiate the contract but having elected to affirm he may not thereafter disaffirm. As a general rule an election to affirm will be inferred from mere continued cohabitation, . . ." 38 C. J. 1285.

As was said by the Supreme Court of North Carolina in the case of *Koonce* v. *Wallace,* 52 N. C. 194: "The marriage was not void, but was only imperfect or voidable for want of capacity, but could be made perfect or be confirmed by the consent of the parties, implied from subsequent cohabitation as man and wife, . . ." We said in the case of *Witherington* v. *Witherington,* 200 Ark. 802, 141 S. W. 2d 30, that the word "void" as used in the statute (§ 9017 of Pope's Digest) meant "voidable." And in the case of *Kibler* v. *Kibler, supra,* we said: "Indeed, we think the correct rule is that he may, after attaining the statutory age at which he may be lawfully married, yet while still a minor, ratify his marriage, and be thereafter estopped to question its validity on account of his minority. . . ."

While it is shown in the case at bar that the parties separated on April 9, 1943, appellant did not enter the Army until July 23, 1943. Appellant became eighteen years of age on May 10, 1943, a short time after the separation and more than two months before he entered

the Army. Neither appellant nor appellee testified in this case and the fact that they separated on the date mentioned does not entirely negative a renewal, at some time after that date, and after appellant became eighteen years old, of cohabitation such as would amount to a ratification of the marriage. The letter which appellant wrote appellee after suit had been filed, after he entered the Army and after he had become eighteen years of age, might be construed as indicating that appellant desired a continuation of the marital relationship which he had assumed and would, if possible, effect a ratification of the imperfect marriage.

By § 521, Title 50, USCA, the Soldiers' and Sailors' Civil Relief Act of 1940, Congress provided: "At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

Appellant, being absent on account of military service, had no opportunity to testify relative to, or make any explanation of, the letter which was introduced in evidence and accepted by the court as a letter written by him, and, since the court did not have the advantage of the testimony of either of the parties, to this suit, we are of the opinion that this is a situation which calls for the application of the provisions of the Soldiers' and Sailors' Civil Relief Act quoted above, and that the lower court should have, on its own motion, stayed proceedings until appellant might have an opportunity to appear in court and testify. The decree of the lower court will therefore be reversed, and this cause remanded with directions to the lower court to re-open this case and to enter an order staying further proceedings

until it becomes possible for appellant to appear and testify, with either party being given the privilege of introducing such additional relevant testimony as either may desire to offer; and the lower court will make such order, pending final hearing, for the support of the child of appellant and appellee as may be proper.