981 P.2d 1087

**In re the Marriage of: Michael Joe MEDLIN, Petitioner–Appellant,**

v.

**Michelle Ann MEDLIN, Respondent–Appellee.**

No. 1 CA–CV 98–0592.

Court of Appeals of Arizona, Division 1, Department E.

June 17, 1999.

Robert M. Bula, P.C. by Robert M. Bula, Kingman, Attorney for Petitioner–Appellant.

Law Offices of Stephen M. Lee by Randall L. Hodgkinson, Kingman, Attorneys for Respondent–Appellee.

## OPINION

KLEINSCHMIDT, Judge.

¶ 1 The Husband, Michael Joe Medlin, the petitioner in this dissolution proceeding, argues that the trial judge erred by awarding the Wife spousal maintenance because he and his Wife were never legally married under Arizona law. He also argues that the trial court abused its discretion in awarding attorneys' fees to the Wife. He requests that the order be vacated and the matter remanded with directions to annul the marriage.

¶ 2 The parties, who were both Arizona residents, married in Nevada in 1987. At the time, the Wife was twenty-two years old and the Husband was sixteen. The Husband was under the legal custody of his mother, who refused to consent to the marriage. The parties were nonetheless able to have the marriage solemnized because the Husband had a note from his stepfather which described the Husband as his son and gave consent to the marriage.

¶ 3 The Husband and Wife lived together until October 1996 when the Husband, acting without a lawyer, filed a petition for dissolution. By mutual agreement, most of the property was divided, but the parties had not decided the issue of spousal maintenance. Following trial, the court awarded the Wife spousal maintenance of three hundred dollars per month for six years or until she remarried or either party died.

¶ 4 The Husband then hired an attorney and filed a motion to amend the petition to request an annulment, arguing that the marriage was void under the laws of Arizona because he never had consent to marry from his custodial parent, as required under Arizona Revised Statutes Annotated ("A.R.S.") sections 25–102 and 122.

¶ 5 The trial judge denied the motion, relying on A.R.S. section 25–112(A) which provides that all out-of-state marriages that are valid under the laws of the state of solemnization are valid in Arizona. The judge found that since the laws of Nevada allow a stepfather to consent to the marriage of a minor, the marriage was valid. Although A.R.S. section 25–112(C) provides that the parties cannot evade the laws of Arizona by getting married out-of-state, the trial judge, employing a rationale that is not clear to us, found this provision only applied to the act of solemnization and not to the parties' capacity to contract. He also found that any dispute the Husband had concerning the validity of the marriage was waived once he filed the petition for dissolution of marriage.

¶ 6 The Husband waived his objection to the validity of the marriage. He filed a petition for dissolution of his marriage that indicated he had been married to the Wife since 1987. The Husband did not object to the validity of the marriage during the settlement conference or during the trial. It was only after the trial, and after the Wife was awarded spousal maintenance, that the Hus-

**308**

band decided to hire an attorney and contest the validity of the marriage. An issue raised for the first time after trial is deemed to have been waived. *See Conant v. Whitney,* 190 Ariz. 290, 293, 947 P.2d 864, 867 (App. 1997) (issue was waived when raised for the first time in a motion for new trial).

¶ 7 In any event, the request to annul the marriage has no merit. Section 25–112, A.R.S., provides:

> A. Marriages valid by the laws of the place where contracted are valid in this state, except marriages that are void and prohibited by § 25–101.
>
> B. Marriages solemnized in another state or country by parties intending at the time to reside in this state shall have the same legal consequences and effect as if solemnized in this state, except marriages that are void and prohibited by § 25–101.
>
> C. Parties residing in this state may not evade the laws of this state *relating to marriage* by going to another state or country for solemnization of the marriage.

(Emphasis added.)

¶ 8 The statute specifically states that the parties cannot evade the laws of the state relating to marriage. We interpret that to mean all marriage laws and not just those relating to the act of solemnization. *See In re Mortenson's Estate,* 83 Ariz. 87, 90, 316 P.2d 1106, 1107 (1957) (first cousins could not evade the laws of Arizona by marrying in another state). By marrying in Nevada without proper consent, the parties evaded the laws of Arizona. Therefore, we must look to the law of Arizona to determine the validity of the marriage. *See Horton v. Horton,* 22 Ariz. 490, 198 P. 1105 (1921).

¶ 9 Section 25–101, A.R.S., declares certain marriages, like those between close relatives, prohibited and void. The marriage of a minor without consent of a parent is not listed as one of these. Instead the proscription against a minor marrying without consent is found in A.R.S. section 25–102, which provides that a minor "shall not" marry without the consent of a custodial parent or guardian, and in section 25–122, which provides that a marriage license cannot issue without the consent of a custodial parent.

Neither statute declares that a marriage obtained in violation thereof is void.

¶ 10 This case is like *Horton,* in which the court found that a marriage in New Mexico between two Arizona residents was valid in Arizona despite the parties' evasion of the laws of Arizona by marrying sooner than one year after the wife had obtained a divorce. The court reasoned that the *Arizona* law did not expressly declare such marriages void. *Horton,* 22 Ariz. at 492, 198 P. at 1106. Although *Horton* declared the marriage in that case valid, it left open the possibility for a different result if the law which was evaded concerned a party's incapacity to contract. *Id.* at 493–94, 198 P. at 1107.

¶ 11 In Arizona, only marriages that are void or voidable may be annulled. *Means v. Industrial Comm'n,* 110 Ariz. 72, 75, 515 P.2d 29, 32 (1973). Generally, marriages are considered a civil contract and can be annulled by a party incapable of contracting. *See Southern Pac. Co. v. Industrial Comm'n,* 54 Ariz. 1, 8, 91 P.2d 700, 705 (1939), *overruled on other grounds by Means v. Industrial Comm'n,* 110 Ariz. 72, 515 P.2d 29 (1973), and *Jackson v. Industrial Comm'n,* 121 Ariz. 602, 592 P.2d 1258 (1979). Since marriages in which one or both of the parties are incapable of contracting are not void under A.R.S. section 25–101, they are voidable.

¶ 12 This conclusion is in accord with the law of other states that hold marriages voidable when a minor marries before reaching the age a minor is allowed to marry by law. *See Taylor v. Taylor,* 249 Ala. 419, 31 So.2d 579, 579–80 (1947) (where statute declared that minors were incapable of contracting marriage, marriage found voidable); *Kibler v. Kibler,* 180 Ark. 1152, 24 S.W.2d 867, 868 (1930) (marriage of minors, although declared void under the statute, found voidable); *Hunt v. Hunt,* 23 Okla. 490, 100 P. 541, 543 (1909) (marriage of minors, although forbidden and prohibited under the statute, found voidable); *State ex rel. Scott v. Lowell,* 78 Minn. 166, 80 N.W. 877, 877 (1899) (although statute declared males over eighteen and females over fifteen capable of contracting for marriage and another statute placed

restrictions on public officers and clergyman from solemnizing a marriage of minors below those ages, marriages of minors found voidable); *Smith v. Smith*, 84 Ga. 440, 11 S.E. 496, 499 (1890) (where marriage of minors declared void under the statute, the court ruled marriage could be ratified).

¶ 13 When a marriage is voidable, it can be ratified by the minor once he or she reaches the age of majority. *See Southern Pac. Co.*, 54 Ariz. at 12, 91 P.2d at 705 (voidable marriages are subject to ratification or disaffirmance by the injured party); *Hodges v. Hodges*, 118 Ariz. 572, 574, 578 P.2d 1001, 1003 (App.1978). *See also Lowell*, 80 N.W. at 877.

¶ 14 Ratification of an underage marriage is normally accomplished by the parties merely continuing to live together as husband and wife after the age of majority is attained. *See Jones v. Jones*, 200 Ga. 571, 37 S.E.2d 711, 712 (1946); *Hood v. Hood*, 206 Ark. 1057, 178 S.W.2d 670, 673 (1944); *May v. Meade*, 236 Mich. 109, 210 N.W. 305, 306 (1926). *See also* 52 Am.Jur.2d *Marriage* § 16 (1970).

¶ 15 The parties in this case cohabited for approximately seven years after the Husband reached his eighteenth birthday, thereby ratifying the marriage. The trial judge's decree of dissolution and award of spousal maintenance is affirmed.

¶ 16 The Husband also objects to the award of attorneys' fees in favor of the Wife. The trial judge found that "the detriment the [Husband] has caused post trial is unreasonable" to the Wife and awarded her $2,500 in attorneys' fees. The Husband argues that the trial judge abused his discretion by not clarifying his findings concerning the parties' respective financial resources and by finding the Husband's post-trial actions unreasonable notwithstanding the judge's acknowledgment that the motions presented novel issues.

¶ 17 We review a trial judge's award of attorneys' fees under an abuse of discretion standard. *See Hrudka v. Hrudka*, 186 Ariz. 84, 95, 919 P.2d 179, 190 (App.1995). The trial judge awarded attorneys' fees under A.R.S. section 25–324, which provides that reasonable attorneys' fees may be awarded after considering the parties' financial resources and the reasonableness of their positions taken throughout the proceedings.

¶ 18 Given that the Husband earns $16,000 more per year than the Wife, and the fact that he attempted to contest the validity of the marriage for the first time after spousal maintenance was already awarded to the Wife, we cannot say the trial judge abused his discretion in awarding attorneys' fees.

¶ 19 The decision of the trial court is affirmed.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge, and EDWARD C. VOSS, Judge.