Filed 12/31/13  Woodard v. Woodard CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| VEDA E. WOODARD,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ANTHONY WOODARD,<br><br>Defendant and Respondent. | B242833<br><br>(Los Angeles County<br>Super. Ct. No. BD334890) |

APPEAL from an order of the Superior Court of Los Angeles County. Christine Byrd, Judge.  Affirmed.

Veda E. Woodard, in pro. per., Appellant.

Desai Family Group, Swati S. Desai and Nisha Dandekar, for Respondent.

————————————————

Plaintiff and appellant Veda Woodard (wife) appeals from the June 11, 2012 order terminating her spousal support and ordering her to reimburse defendant and respondent Anthony Woodard (husband) $168,400 for overpayment of spousal support and attorney fees. Wife contends the trial court's finding that husband's spousal support obligation terminated after wife remarried is not supported by substantial evidence. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Husband and wife were married in 1985 and had two children, both of whom are now adults. Wife filed for divorce in 2000, and a judgment of dissolution only was entered in October 2001. Meanwhile, wife was awarded temporary monthly spousal support of $1,423. An October 2002 order awarded wife monthly spousal support of $2,400, for five years commencing July 1, 2002, and husband was ordered to pay wife's attorney's fees in the amount of $25,000.

On October 25, 2007, wife filed an Order to Show Cause (OSC) seeking modification of the five year spousal support order to permanent support. Wife declared that numerous medical conditions had prevented her from finding full-time employment. In June 2008, the trial court reinstated the $2,400 monthly support order effective June 1, 2008. That award became permanent following a September 11, 2009 hearing, at which the court also ordered husband to pay wife's attorney's fees of $10,000.

On April 20, 2012, husband filed a request for an OSC re termination of all spousal support on the grounds that wife had married Michael Armbruster in October 2006, a year before she obtained the 2007 support modification order. Attached to husband's OSC application were the following Arizona records: (1) an Arizona marriage license for Michael Armbruster and wife; (2) a petition for divorce filed by Armbruster on April 28, 2011; and (3) a Consent Decree For Annulment signed by Michael Armbruster and wife using the name "Veda Armbruster," filed on January 20, 2012, which states that the couple was married on October 30, 2006. In addition to termination of future spousal support, husband sought reimbursement of all support payments made after wife remarried and the $10,000 in attorney's fees he paid pursuant to the September

2

2008 order. In her written opposition, wife did not deny that a marriage took place. As summarized by the trial court, wife stated the marriage, "wasn't consummated and it was annulled and she doesn't think that's the same as a divorce."

On June 6, 2012, wife testified that she was living in California and Armbruster in Arizona. Wife had never lived with Armbruster and did not marry him in October 2006. Wife explained that she thought about marrying Armbruster "and went to take out a marriage license [in Arizona], and actually what happened was I got into a pretty heated argument with" Armbruster. Unable to agree on several important issues, "nothing happened. There was no marriage. We did not have a ceremony. There was nothing. We just took out the marriage license, and I'm not familiar with, you know, what has to happen after that. I thought when you take out the marriage license, if you don't use the license, I just thought you're not married. That's what I thought." After they called off the marriage, wife returned to California. Wife did not know why, if there was no marriage, an annulment had to be obtained. She "was just basically told that when [Armbruster] went to go file a marriage license to get married to someone, that because of the marriage license had never been returned to the clerk, that something had to be filed in the court to clear it out. And I guess that's how it came about, where he must have filed these papers. That's the only thing I know." Wife admitted that she signed the Arizona Consent Decree as "Veda Armbruster," and that her signature was notarized. The identification wife showed to the notary was her California Driver's License, which identifies wife as "Veda Woodard," not Veda Armbruster. Wife signed the Consent Decree because she was told she had to so that Armbruster could marry someone else. Wife denied ever changing her name to Armbruster or ever using that name other than when she signed the Consent Decree.

The trial court found not credible wife's testimony that no marriage took place. Citing *In re Marriage of Sefton* (1955) 45 Cal.2d 872, 874-876, 878, and *In re Marriage of Berkely* (1969) 269 Cal.App.2d 872, 875, the trial court rejected wife's argument that, under the "relation back doctrine" used to protect children of an annulled marriage from illegitimacy, the annulment revived her right to spousal support. The trial court

3

concluded that husband's spousal support obligation terminated by operation of law on October 30, 2006, the date wife married Armbruster. As a result, husband had overpaid spousal support in the amount of $158,400, plus the $10,000 attorney fee award. Wife was ordered to make monthly payments of $935.55. Wife timely appealed.

## DISCUSSION

### A. *Standard of Review*

We review an order modifying spousal support under the abuse of discretion standard. Such abuse occurs when the trial court modifies a support order without substantial evidence of a material change in circumstances. (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 398.) In assessing the sufficiency of the evidence of change in circumstances, the appellate court " ' "must accept as true all evidence tending to establish the correctness of the trial judge's findings, resolving all conflicts in the evidence in favor of the prevailing party and indulging in all legitimate and reasonable inferences to uphold the judgment." ' [Citation.]" (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 899.) In this case, the alleged change of circumstances is wife's remarriage in October 2006 to Armbruster, which terminates spousal support as a matter of law. (Fam. Code, § 4337.)[1]

### B. *Substantial Evidence Supports the Finding That Wife Remarried*

Wife contends the trial court's finding that wife remarried on October 30, 2006 was not supported by substantial evidence. She argues that husband failed to introduce evidence of "a valid Marriage Certificate, proof of a marriage ceremony, any witnesses, a valid Private Investigator report or written proof" that wife actually married Armbruster. We conclude that there was substantial circumstantial evidence that wife married Armbruster in October 2006.

---

[1] All future undesignated statutory citations are to the Family Code.

4

Unless otherwise agreed in writing, the obligation of a party to pay spousal support terminates upon the remarriage of the supported spouse. (§ 4337.) Application of section 4337 requires entry into a legal marriage. (*In re Marriage of Left* (2012) 208 Cal.App.4th 1137, 1145 (*Marriage of Left*).) In California, the requirements of a legal marriage are that the parties consent to the marriage; consent must be followed by the issuance of a license; and the marriage must be solemnized by an authorized person. (§§ 300, 400.) In addition, the parties must declare, in the presence of the person solemnizing the marriage, that they take each other as husband and wife. (§ 420.)"[2] (*Ibid.*) The court in *Marriage of Left*, found section 4337 inapplicable where the supported spouse went through a religious marriage ceremony, but the couple never obtained a marriage license.

Arizona's requirements for a valid marriage are similar to California's. (Ariz. Rev. Stats., § 25-111, subd. B. [marriage contracted in Arizona is not valid unless a marriage license is issued and the marriage is solemnized by an authorized person before the expiration of the license].) Arizona marriage licenses expire one year from the date of issuance. (Ariz. Rev. Stats., § 25-121, subd. B.) In Arizona, only marriages that are void or voidable may be annulled. (*Medlin v. Medlin* (1999) 194 Ariz. 306, 309; see Ariz. Rev. Stats., § 25-301 [marriage may be declared null and void "when the cause alleged constitutes an impediment rendering the marriage void."]; Ariz. Rev. Stat. § 25-101 [identifying factors that render marriages void and prohibited].)

---

**2**　　Section 300 provides: "(a) Marriage is a personal relation arising out of a civil contract . . . to which the consent of the parties capable of making that contract is necessary. Consent alone does not constitute marriage. Consent must be followed by the issuance of a license and solemnization as authorized by this division, except as provided by Section 425 and Part 4 (commencing with Section 500). [¶] (b) For purposes of this part, the document issued by the county clerk is a marriage license until it is registered with the county recorder, at which time the license becomes a marriage certificate." Section 400 identifies the persons authorized to solemnize a marriage. Section 420, subdivision (a) provides: "No particular form for the ceremony of marriage is required for solemnization of the marriage, but the parties shall declare, in the physical presence of the person solemnizing the marriage and necessary witnesses, that they take each other as husband and wife."

Here, wife's challenge to the sufficiency of the evidence disregards the well settled principle that a fact may be proved by direct or circumstantial evidence. (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 775.) Circumstantial evidence is defined in the California Civil Jury Instructions as "evidence that, if found to be true, proves a fact from which an inference of the existence of another fact may be drawn. [¶] A factual inference is a deduction that may logically and reasonably be drawn from one or more facts established by the evidence." (BAJI No. 2.00.)

The following circumstantial evidence supports the trial court's finding that wife was married to Armbruster: (1) wife and Armbruster obtained an Arizona marriage license, (2) Armbruster filed for divorce in April 2011, and (3) under penalty of perjury wife signed as "Veda Armbruster" the Arizona Consent Decree for Annulment reciting the parties were married on October 30, 2006. The trial court reasonably found lacking credibility wife's testimony that there was no marriage and the Arizona Consent Decree was necessary to "clear out" the unused marriage license so that Armbruster could marry someone else. Accordingly, the order terminating spousal support and requiring wife to reimburse husband for prior support and attorney fee payments was supported by substantial evidence.

## DISPOSITION

The judgment is affirmed. Husband to recover his costs on appeal.


RUBIN, J.

WE CONCUR:



BIGELOW, P. J.



GRIMES, J.

6