NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

AMY L. MCDOUGALL, *Petitioner/Appellant*,

*v.*

GREGORY A. MCDOUGALL, *Respondent/Appellee*.

No. 1 CA-CV 21-0752 FC
FILED 7-19-2022

Appeal from the Superior Court in Maricopa County
No. FC2020-052090
The Honorable Theodore Campagnolo, Judge

**AFFIRMED**

COUNSEL

High Desert Family Law Group LLP, Phoenix
By Craig Peter Cherney
*Counsel for Petitioner/Appellant*

Dickinson Wright PLLC, Phoenix
By Marlene A. Pontrelli, Vail Cloar, Alexandra Crandall
*Counsel for Respondent/Appellee*

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which
Presiding Judge Maria Elena Cruz and Judge Peter B. Swann joined.

**P A T O N**, Judge:

¶1          Amy L. McDougall ("Mother") appeals from the Decree of Dissolution entered ending her marriage to Gregory A. McDougall ("Father"). We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Before their 2008 marriage, Mother and Father (collectively "Spouses") entered into a prenuptial agreement ("the Agreement") regarding Husband's membership in three limited liability partnerships created by his family ("the Family Entities"). The Agreement stated that all of Father's interests in the Family Entities and all income received by him from any of the Family Entities, including any efforts after marriage spent managing or administering them, would be his sole and separate property. The Agreement also listed several other assets belonging to each spouse as their sole and separate property, including investment and banking accounts, such as Father's Scottrade account.

¶3          Mother petitioned for dissolution of the marriage in June 2020. In 2021, the superior court held a one-day trial on the outstanding issues remaining between Spouses, including: (1) whether certain financial accounts constituted separate property under the Agreement, (2) child support for Spouses' minor child, (3) potential arrearages, and (4) attorneys' fees and costs.

¶4          Although the accounts in dispute were funded during the marriage, Father claimed, without presenting any tracing evidence at trial, that they were walled off from any account into which community assets (such as earnings) were commingled. Mother disagreed and hired an expert to determine if any of the accounts could be traced to accounts listed in the Agreement. Father submitted a rebuttal report noting the lack of clarity in Mother's report as to what her expert's conclusions actually were. At trial, Mother's expert clarified he could not trace any of the accounts to pre-existing funds designated as Father's separate property in the Agreement.

¶5          In its October 2021 decree, the superior court entered a final order under Arizona Rule of Family Law Procedure 78(c). The court found: (1) the Wells Fargo, Glacier, and Sunflower Bank accounts were Father's sole and separate property, (2) the remaining six accounts were community property, (3) Mother was entitled to $332.00 per month in child support, and (4) Father was entitled to attorneys' fees due to Mother's unreasonable position as to the disputed accounts.

¶6         Mother timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

I.         **The superior court did not err in concluding that certain financial accounts remained Father's separate property.**

¶7         The question of whether property is separate or community property is one we review de novo.  *Helland v. Helland*, 236 Ariz. 197, 199, ¶ 8 (App. 2014).  But we review the record in the light most favorable to supporting the superior court's determination.  *See Cooper v. Cooper*, 130 Ariz. 257, 260 (1981).

¶8         Mother argues the superior court erred in finding that the disputed financial accounts were Father's sole and separate property, given that Father "presented no tracing evidence."  We disagree.

¶9         Property acquired during a marriage is presumed to be community property.  A.R.S. § 25-211(A); *see Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979).  A spouse seeking to overcome this presumption—Father here—has the burden to demonstrate by clear and convincing evidence that the property was separate property.  *In re Marriage of Cupp*, 152 Ariz. 161, 164 (App. 1986).  Father was required to provide evidence tracing any *commingled* funds in the disputed accounts to the original separate property noted in the Agreement.  *See Cooper*, 130 Ariz. at 259-60.

¶10         The superior court relied on the tracing evidence presented by Mother's expert.  The court found that "all of the non-Wells Fargo accounts, except for the Sunflower account . . . and the Glacier account . . . contained . . . payroll deposits or other community type funds."  Consequently, those accounts were found to be community property.  But the court found that the Wells Fargo, Sunflower, and Glacier accounts were funded with separate funds from the Family Entities or from gifts or loans to Father from family.  The court further found that because these funds were not commingled they did not need to be traced.  This conclusion is supported by Mother's own expert report, which illustrates a separate, walled-off circuit of funds circulating among the three Wells Fargo accounts, the Sunflower money market account, and Glacier account.

¶11         Although it was Father's burden  to provide tracing evidence if the funds were commingled, Mother's expert revealed that there was no commingling of separate funds.  *See id.*  The superior court was permitted to consider Mother's evidence in reaching its conclusion.  And we "will not

substitute [our] judgment for that of the trial court when there is sufficient evidence to support the trial court's finding." *See Cupp*, 152 Ariz. at 164.

¶12 Mother argues the court erred in its interpretation of the report because the report could not trace the funds back to the separate property on Schedule A of the Agreement. But the Agreement also exempted income from the Family Entities as sole and separate property, and both the Agreement and the statute governing separate property exempt property acquired during a marriage by gift. *See* A.R.S. § 25-211(A)(1). Further, Father testified that the origination of the Wells Fargo accounts was a rollover of the listed Scottrade account in Schedule A. These are the funding sources identified by Mother's own expert and, consistent with the parties' Agreement, all remain separate property absent evidence of commingling. We find that reasonable evidence in the record supports the superior court's judgment.

## II. The superior court did not err in its child support award.

¶13 Mother argues the superior court erred by calculating a child support award based on an incorrect gross income calculation and an inequitable credit to Father for daycare. We review a child support award for abuse of discretion and view the record in the light most favorable to affirming the superior court's decision. *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999).

¶14 Mother suggests that the "undisputed" testimony at trial demonstrated that she earned $5,630.00 in monthly gross income. Mother testified as to that monthly gross income, reported it in her affidavit of financial information, and in the joint pretrial statement. But the evidence was less than clear because she also testified that she earned $40.00 per hour and later, that she earned "five or 6,000 a month" in gross income. This required the superior court to consider conflicting evidence, and the court accepted Mother's testimony that she earned $40.00 per hour/$6,933.33 per month as the basis for its child support award. We defer to the superior court's resolution of conflicting evidence and determinations of witness credibility. *In re Marriage of Foster*, 240 Ariz. 99, 101, ¶ 5 (App. 2016) (citation omitted). We find no error.

¶15 Mother testified that she paid $270.00 per month for childcare expenses. In its child support calculation, the superior court found each party responsible for $135.00 in monthly childcare expenses. Mother argues this was error in that the court misunderstood the child support worksheet. The court, however, had discretion to split the cost of childcare and require

both parties to pay half. *See* A.R.S. § 25-320 app. § 13 (2018). The court did not err in crediting each parent with half of the childcare expenses.

### III.    The superior court did not err in its award of attorneys' fees.

**¶16**        Mother argues that because Father can better afford to pay his fees, he should not be given an attorneys' fees award. We review an award of attorneys' fees for an abuse of discretion. *Medlin v. Medlin*, 194 Ariz. 306, 309, ¶ 17 (App. 1999). A court may award attorneys' fees pursuant to A.R.S. § 25-324(A) after considering the reasonableness of a party's positions and the financial resources of both parties. But a court may award fees to a party who adopts unreasonable positions, even if they are the party least able to pay. *MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 37 (App. 2011).

**¶17**        Here, the superior court found that Mother was unreasonable in continuing to claim Father's Wells Fargo, Glacier, and Sunflower accounts were community property after the date her own expert reported that funds in those accounts were not commingled. Because the court found that the "great bulk" of evidence, testimony, and exhibits pertained to the dispute over these accounts, the court awarded Father his fees for the period after Mother received her expert report. The court did not abuse its discretion.

### ATTORNEYS' FEES AND COSTS

**¶18**        Both parties request an award of costs and attorneys' fees pursuant to A.R.S. § 25-324(A) and Arizona Rule of Civil Appellate Procedure ("ARCAP") 21. In our discretion, we award Father attorneys' fees and costs upon compliance with ARCAP 21.

### CONCLUSION

**¶19**        We affirm.

